[Sac. No. 1896.  In Bank.—December 2, 1912.]

## JAMES J. STEVINSON (a Corporation), Appellant, v. WILLIAM H. JOY, Respondent.

VENDOR AND VENDEE—WRITTEN CONTRACT—PROVISION MAKING TIME OF ESSENCE—CANNOT BE VARIED BY PAROL—AGENCY.—A provision in a written contract for the sale of land making time and punctuality in the payments of the installments of the purchase price of the essence of the contract cannot be varied by evidence of parol statements made antecedent to the execution of the contract, where there was no extrinsic ambiguity to be explained, and no illegality or fraud to be established.  Nor can such provision be varied by evidence of subsequent statements of an alleged agent of the vendor, where the contract expressly declared that no agent had authority to alter or change its terms, and no attempt was made to establish any authorization or power in the agent so to do.

ID.—WAIVER OF FORFEITURE—ACCEPTANCE OF PAYMENTS AFTER MATURITY—NOTICE OF INTENTION TO ENFORCE PROVISION FOR FORFEITURE. Where time is made of the essence of the contract for the payment of rent or other payments of money, and this covenant has been waived by the acceptance of the rent or other moneys after they are due, with knowledge of the facts, such conduct will be regarded as creating such a temporary suspension of the right of forfeiture as could only be restored by giving a definite and specific notice of an intention to enforce it.

ID.—COVENANT AGAINST ASSIGNMENT—SUBLETTING NOT PROHIBITED.— A covenant in a contract for the sale of land against assigning will be strictly construed and will not be held to prohibit a subletting.

ID.—BUILDING ERECTED BY SUBLESSEE NOT AFFIXED TO LAND—AGREEMENT FOR REMOVAL.—A building erected by a sublessee of the vendee, on the property agreed to be sold in pursuance of an agreement between them that it might be removed at any time the sublessee desired, which building was not permanently affixed to the land, but rested upon boards which were not imbedded in the ground or attached to any material affixed to the land, and which might be removed from the land without disturbing it, did not become a part of the realty.

APPEAL from a judgment of the Superior Court of Merced County.  E. N. Rector, Judge.

The facts are stated in the opinion of the court.

Frank H. Farrar, for Appellant.

F. G. Ostrander, and H. K. Landram, for Respondent.

HENSHAW, J.—This action was brought by plaintiff to quiet its title to a parcel of land in the county of Merced and to enjoin defendant from removing a building which he had constructed thereon. As to the land in controversy, defendant asserted an interest growing out of the following facts found by the court: On October 1, 1908, the plaintiff, with one Lee Pearson, entered into a written contract, whereunder plaintiff extended to Pearson the privilege of purchasing the land for the sum of $1,195, upon the payment by Pearson to plaintiff of the sum of two dollars per week until the total sum paid should equal the sum of $1,195. Pearson was given the right to use and occupy the land during the life of the agreement and under it Pearson did enter into possession of the land. Time, and in particular the time of payments, was declared to be material and of the essence of the contract. The court found that the provision making the punctual payments of the essence of the contract and providing for a forfeiture thereof in case such payments were not made at or within the times limited was waived by the plaintiff; that plaintiff "accepted from said Pearson various sums of money at various times long after the same were due, which it credited upon the said purchase price of $1,195; and did inform the said Pearson that said weekly payments would not be insisted upon, and before any forfeiture of said privilege to purchase said lands would be declared by plaintiff, that notice of any delinquency in said payments and a demand for the payment of the same would be made upon him by the plaintiff; that on the 19th day of October, 1909, and before any notice of forfeiture of said privilege, or any notice of delinquency of any payment had been given the said Pearson, and before any demand for the payment of any money then due under the said agreement had been made upon said Pearson, the said Pearson forwarded the plaintiff all the moneys due from him to plaintiff at said time under said agreement, but plaintiff refused to accept the same or any part thereof. Plaintiff has never given said Pearson any notice of his delinquency of any of said payments and has never made any demand upon

said Pearson for any payment or payments due under said agreement. Plaintiff has never given said Pearson any notice that it would insist upon the provisions of said agreement as to time being of the essence of said agreement for said weekly payments.'' Further, the findings show that the defendant leased this land from Pearson at a monthly rental sum of $4.50, and that defendant was in possession of the leased land under the terms of his lease; that he erected upon the leased land a building of the value of about five hundred dollars, that this building is not permanently affixed to the land, but rests upon boards which are not imbedded in the ground or attached to any material which is affixed to the land; that this building may be removed from the land without disturbing it; that at the time of the erection of the building it was agreed and understood by and between Pearson and the defendant that defendant should have the privilege of removing the building at any time he so desired.

The precise terms of the contract touching the matters hereinafter to be considered are as follows:

''Time and punctuality are hereby made material to and of the essence of this option. Upon termination of the option herein except by purchase, if possession has been taken by first party, second party shall have the right to immediately or at any time thereafter enter upon said land and premises and retake possession thereof, together with improvements and appurtenances thereunto belonging, and said party covenants and agrees that he will then surrender unto said second party upon demand said lots, improvements and appurtenances without delay or hindrance. No waiver of times of payments for continuance of option shall be valid in favor of the first party unless reduced to writing and subscribed by the second party thereto. No assignment of this option shall be valid unless the same be made with the written consent of the second party. It is further understood and agreed that no agent of either party to this option has authority to alter or to change the terms of this option or to bind either party hereto by any statement, except those herein contained.''

The court under the findings, which have been sufficiently indicated, gave judgment for defendant, sustaining him in his possession and refusing an injunction against him. From this portion of the judgment plaintiff appeals.

It is first urged that the court erroneously admitted evidence upon which it based its finding that plaintiff "did inform the said Pearson that said weekly payments would not be insisted upon, and before any forfeiture of said privilege to purchase said lands would be declared by plaintiff, that notice of any delinquency in said payments and a demand for the payment of the same would be made upon him by plaintiff." The evidence here referred to is the evidence of Pearson, the party to the option contract made with plaintiff. Pearson was allowed to testify that Whistler, plaintiff's agent, prior to the execution of the contract told him that "as long as a man was trying to do right making his payments, everything would be all right whether or not I had kept up on my land," and that subsequently, after the execution of the contract and when Pearson was in default in his payments that he, Pearson, said to Whistler "in an off-hand way, not thinking but what it was all right, I said 'I suppose if I get behind, would they be apt to take the land from me?' and he said, 'Don't you worry about that.' He said 'It will be credited up to you. There will be a statement if you get behind two weeks.' He said 'There will be a statement sent to you showing you have paid so much and so much in arrears.'" This evidence was clearly inadmissible. As to the first purported statement of Whistler made antecedent to the execution of the contract, it was a bald attempt to vary by parol the terms of a subsequently executed written contract. None of the circumstances under which such evidence is permissible are here present. Even going to the unwarranted extent of saying that this testimony amounted to "evidence of the circumstances under which the agreement was made," still the occasion was not shown which makes evidence of such circumstances permissible. There was no extrinsic ambiguity to be explained; there was no illegality or fraud to be established. (Code Civ. Proc., sec. 1856.) The testimony of Whistler's declaration subsequent to the execution of the contract was equally inadmissible. Here again was a plain effort not only to vary the terms of a written contract, but to vary the terms of a written contract which declares the agreement to be that no agent has authority to alter or change its terms, by showing that an agent of the plaintiff did undertake to do this precise thing, moreover, to show this without any attempt to

establish any authorization or power in the agent so to do. If, therefore, the judgment which the court rendered depended upon the findings based upon this evidence, a reversal would be necessary. But the finding above quoted, to the effect that plaintiff informed Pearson that the weekly payments would not be insisted upon, may be entirely discarded and the judgment still be supported by the finding of ultimate fact,— namely, that plaintiff waived the agreement making time of the essence of the contract.

To a consideration of the evidence and of the law touching this finding we are thus brought. It is shown without dispute that the contract between plaintiff and Pearson was entered into on October 1, 1908; that thereafter he made numerous payments which were received by plaintiff and credited to him under his option contract; that no one of these payments was made within the time limited by the contract; that they were made at irregular intervals from October 1, 1908, until August 21, 1909; that thus in October, 1909, he was twelve weeks overdue in his payments; that he had received no notice from plaintiff demanding the payments and no notice that plaintiff had or would exact the forfeiture because of nonpayment. When, in October, he sent to plaintiff the full amount of the moneys due, he received a letter from plaintiff in response returning the twenty-five dollars which he had sent, the letter stating that it was returned "for the reason that your option to purchase the west half of lot 18, section 14, of the Stevinson Colony has been canceled by us on account of your failure to make your payments when due, in accordance with the conditions expressed in the option formerly held by you."

Thus, then, is presented the question of the correlative rights of the parties under the facts shown. Appellant insists that by its conduct in accepting the delinquent payments it did no more than to waive its right to declare a forfeiture on account of such delinquencies, but that its right to declare and enforce a forfeiture as to any other delinquencies and to enforce this forfeiture without previous notice to the defendant cannot be questioned. The cases, however, which it cites in support of this position fall far short of sustaining it. *McGlynn* v. *Moore*, 25 Cal. 384, was an effort to enforce the forfeiture of a lease for a failure to build a warehouse within the time covenanted by the lease. It appeared that after the

failure to build the warehouse the landlord accepted rent.
This court declared that this acceptance of rent, with full
knowledge of the facts constituting a breach of the covenant
was a waiver of the forfeiture, unless the covenant to build
was a continuing covenant. It determined upon the language
of the lease that it was not a continuing covenant, and the
tenant was therefore right in insisting upon a waiver.
Clearly this case has no bearing upon the question. In *Jones*
v. *Durrer*, 96 Cal. 95, [30 Pac. 1027], no question of notice
to the tenant was involved. The tenant persistently refused
to comply with continuing covenants of the lease, and the
holding of this court is merely to the effect that waivers of
former breaches do not preclude the lessor from maintaining
an action for subsequent breaches continuous in their nature.
It is equally plain that this case is not in point. The right
of plaintiff to maintain an action of forfeiture for breach of
the covenant is not here in question. The real question is
whether or not the tenant is entitled to notice before the for-
feiture is exacted, and if so, to what kind of notice. *Thomp-*
*son* v. *Gorner*, 104 Cal. 168, [43 Am. St. Rep. 81, 37 Pac. 900],
which appellant declares to be precisely in point and conclu-
sive upon the matter, was an action upon a promissory note
which provided for the payment of a monthly interest at eight
per cent per annum, but further, that if the principal or in-
terest be not paid as it becomes due, it shall thereafter bear
interest at the rate of one per cent per month. The payee,
after the principal had become due, had paid interest for a
certain time at the rate of eight per cent per annum, and this
interest had been accepted. Thereafter, upon a later offer by
the payee to pay another month's interest at the rate of eight
per cent, the holder of the note refused to receive it and de-
manded interest at one per cent per month. The payee then
tendered to plaintiff the whole amount of the principal due
and the amount of interest at eight per cent per annum. This
the plaintiff refused to accept. The court held that as to
those months in which plaintiff had accepted interest at the
rate of eight per cent per annum, there was a waiver of the
right to demand one per cent a month; that the acceptance
amounted to an executed oral agreement at variance with the
terms of the written contract only for the months for which
it was accepted. But, says this court, plaintiff "is entitled,

however, to interest at one per cent per month from the time she first demanded it." There is no parallelism between *Thompson* v. *Gorner* and the case at bar. But applying its reasoning, it would be unquestioned that plaintiff would be entitled to exact prompt payments and to enforce the forfeiture from and after the time it made demand on Pearson, a demand, however, which it never made. These are all the cases cited and relied upon by appellant, and it must be apparent that no one of them touches the question under consideration. The true rule is firmly established and recognized by all the authorities. Where time is made of the essence of the contract for the payment of rent or other payments of money, and this covenant has been waived by the acceptance of the rent or other moneys after they are due, and with knowledge of the facts, such conduct will be regarded as creating "such a temporary suspension of the right of forfeiture as could only be restored by giving a definite and specific notice of an intention to enforce it." Such is the language of *Monson* v. *Bragdon*, 159 Ill. 66, [42 N. E. 383], quoted with approval by this court after an extensive review of the authorities in *Boone* v. *Templeman*, 158 Cal. 290, [139 Am. St. Rep. 126, 110 Pac. 947]. So in *Standard Brewing Co.* v. *Anderson*, 121 La. 935, [15 Ann. Cas. 251, 46 South. 926], the supreme court of Louisiana declares that where month after month the lessor has been receiving payment of the rent a few days later, without objection, if he desires in the future to hold the lessee strictly to payment on the day the rent falls due, he must give him notice to that effect; otherwise, the lessee will not be in legal default from delaying the usual time. In *Barnett* v. *Sussman*, 116 App. Div. 859, [102 N. Y. Supp. 287], the same principle is declared in a case where realty was sold under a contract providing for payments in monthly installments at regular stated periods, and that on default in any payment the vendor might thirty days thereafter elect without notice, that all payments become forfeited to her as liquidated damages. It was held that the acceptance by the vendor from the beginning of payments not made according to the contract but irregularly as to time and amount, the purchaser being at all times in arrears, was a waiver of the forfeiture clause, which could not be revived, except on notice to the purchasers that if they did not pay the balance due within

a reasonable time specified, the forfeiture would then be exercised. It follows herefrom that the court's finding that plaintiff had waived its forfeiture clause and that the result was that it could not be restored without notice to Pearson and an opportunity to him to make good the delinquent payments cannot be controverted.

Appellant's argument upon the second count,—namely, its right to an injunction to stay the threatened removal of the building is based almost wholly upon its previous contention that Pearson had forfeited his option and that defendant Joy therefore was a mere trespasser upon the property. Its further argument that the clause in the option declaring that an assignment of it should be invalid unless made with the written consent of the plaintiff is without efficacy in this consideration. The distinction between an assignment and a subletting is important and well recognized. A covenant against assigning will be strictly construed and will not be held to embrace the subletting. (18 Am. & Eng. Ency. of Law, 2d ed., pp. 659, 680.) There was, therefore, nothing in Pearson's contract with plaintiff which forbade his subletting to Joy. And, finally, it may be said under the finding of the court, which is not attacked, the building erected by defendant was not attached to and did not become a part of the realty. (*Collins* v. *Bartlett,* 44 Cal. 371; *Pennybecker* v. *McDougal,* 48 Cal. 160.) As personal property plaintiff had no right whatsoever to defendant's structure.

The judgment appealed from is therefore affirmed.

Angellotti, J., Sloss, J., and Melvin, J., concurred.