[Civ. No. 2446.      Third Appellate District.—September 26, 1922.]

## R. C. BROWN, Appellant, v. CHOWCHILLA LAND COMPANY et al., Respondents.

[1] VENDOR AND VENDEE—DEFAULT IN PAYMENTS—NOTICE OF CANCELLATION OF CONTRACT BY VENDOR — CONSTRUCTION OF.—Where a notice of cancellation of a contract for the sale of real estate for failure to make the payments therein provided contained no demand for the payment of what was due nor afforded any intimation that the vendor would insist upon prompt payment in the future, it could not operate as a restoration of the right to declare a forfeiture for failure to pay what was due nor could it be considered as notice that the vendor would insist upon prompt payments in the future.

[2] ID.—ACCEPTANCE OF OVERDUE PAYMENTS—NONWAIVER OF RIGHT OF FORFEITURE FOR SUBSEQUENT DEFAULTS—EFFECT OF STIPULATION OF CONTRACT.—Where the parties to a contract for the sale of real estate expressly provide that the acceptance by the vendor of payments after they are due shall not be deemed a waiver of the provision that time is of the essence of the contract and shall not be considered a relinquishment of the vendor's right to claim a forfeiture for any subsequent default on the part of the vendee, it is not illegal or inequitable for the vendor to insist upon forfeiture for any subsequent default.

APPEAL from a judgment of the Superior Court of Madera County. W. M. Conley, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fee & Ring for Appellant.

Butler & Van Dyke for Respondents.

BURNETT, J.—This action was brought for specific performance of three separate contracts for the purchase and sale of different pieces of real estate. The contracts provided for monthly payments of interest and part of principal on the first day of each month extending over a period of seven and one-half years, although the purchaser had the privilege of paying the full amount sooner. The contracts contained these covenants:

"And it is further agreed that in case of a default in the payment of any of said sums, or any installment or

interest due thereon, for the period of two months after they become due, all money previously paid by the purchaser shall, at the option of the seller, become forfeited to the seller and retained as settled and liquidated ·damages and rent for the use and occupation of the property as herein permitted, and thereupon the seller shall be released from all obligation in law and equity to convey said real property and the purchaser shall immediately deliver possession thereof to the seller, and herein it is agreed that time is of the essence of this contract.

"The purchaser covenants and agrees that a breach or violation on his part of any of the conditions, restrictions or covenants contained in this indenture shall immediately terminate all rights and interests of said purchaser thereunder, and all rights, title, ownership and interest whatsoever in and to said real property, and every portion thereof shall immediately without notice or entry or compensation or obligation of any kind to said purchaser revert to and become absolutely vested in the seller, its successors and assigns.

"The waiver by the seller of any breach of any covenant or agreement herein contained on the part of the purchaser shall not be deemed or held to be a waiver of any subsequent or other breach of said covenant or agreement, nor a waiver of any other covenant or agreement herein contained."

The contracts also provided that the purchaser should have the privilege of entering into possession of the premises and continuing therein "unless forfeited by the non-payment of the purchase money or any installment thereof," but in consideration of said right of possession he should pay all taxes levied against the property. The contracts were executed on October 1, 1913, and the first seven payments were made within a few days after the time when they were due. The June and July payments of 1914 were made on August 20th, leaving the August payment in arrears, but this was paid September 25th. Two more monthly installments were paid on January 3, 1915, two on March 11th, and two on August 6th, following, leaving plaintiff at that time six months in arrears on each contract. For nearly three years thereafter plaintiff paid no other installment on the property in controversy herein. In

April, June, and July, 1918, he made payments aggregating
$120 on one of the contracts. No other payments were
thereafter made or offered to be made on any of the contracts
until January 9, 1920, other than the small amount for taxes
paid for the use of the property, the last payment therefor
having been made in December, 1918. On February 5, 1919,
plaintiff received three letters from defendant, all substan-
tially alike but referring separately to the three lots
of land, as follows: "Please be advised that we have this
day canceled the contract between this company and your-
self, covering Block 130, because of your failure to make the
payments due thereon. This cancellation is in accordance
with the provisions of said contract." On January 9, 1920,
the plaintiff wrote defendant as follows: "Please prepare
deeds as per contract in Blocks 129–130–131, money for
same at Chowchilla National Bank." To which, on the
next day, defendant replied as follows: "We are very
much surprised at your letter of January 9th requesting
deeds covering Blocks 129, 130 and 131. As you were noti-
fied over a year ago, your contracts covering these lots
were canceled because of your failure to make the payments
provided for thereunder." Suit was then brought to com-
pel defendant to convey to plaintiff said blocks, and after
the cause was argued and submitted the court rendered
judgment for the defendant for costs, from which judgment
the appeal has been taken.

One of the main controversies relates to the question of
waiver. As to this the trial court found "that defendant
has never waived the provision in said contract that time
was of the essence thereof nor waived nor agreed to waive
its right to cancel and terminate said contract for failure
to make the payments therein agreed to be made as and
when agreed to be paid or the right to keep and retain
upon such cancellation the moneys theretofore paid by it
pursuant to said contract."

Plaintiff's theory and contention was and is "that the
power of the Chowchilla Land Company to forfeit his rights
under the contract was temporarily suspended by reason of
its accepting payments thereunder long after the same
were due, and its course of dealing with him which evinced
a purpose to permit him to meet his obligations as best
he could; that the right to forfeit could only be revived by

a demand upon plaintiff to make up his past delinquencies, and that in the future it would exact and expect a strict compliance with the contracts by him, and because such demand was never made, the notices of cancellation of February 5, 1919, were legally insufficient to forfeit his rights, notwithstanding the provision" in the contracts that "time is and shall be of the essence of this agreement."

In support of the legal doctrine thus stated many cases are cited, but we may notice only the leading California decisions.

In *Boone* v. *Templeman,* 158 Cal. 290 [139 Am. St. Rep. 126, 110 Pac. 947], the whole question was exhaustively considered, with the citation of many authorities. The action therein was by the purchaser, Boone, for specific performance, and it appears that, during the entire period in controversy, he was in possession and in actual use of the land. After reciting the facts showing that many payments were accepted without protest by the vendor long after they were due, the supreme court said: "We think from these facts a court might infer a waiver of the conditions regarding forfeiture and time and that they supported the general allegation of the complaint that Templeman had waived those conditions. The authorities with practical unanimity so hold." And the court quoted with approval the following from *Monson* v. *Bragdon,* 159 Ill. 66 [42 N. E. 385]: "While not necessarily an absolute permanent waiver, yet in a court of equity there was at least such a temporary suspension of the right of forfeiture as could only be restored by his giving a definite and specific notice of an intention to that effect." It is to be observed that Templeman did not exercise his option to declare the whole price due upon the default for sixty days in paying any of the installments, but permitted all to become due by lapse of time. In that respect the case differed from this, as herein some of the installments did not become due until after the suit was brought.

In *Stevinson* v. *Joy,* 164 Cal. 279 [128 Pac. 751], the action was brought by the vendor to quiet his title to a parcel of land and to enjoin the vendee from removing therefrom a building which the latter had erected thereon. Therein also numerous payments were made by the vendee and accepted by the vendor after the time provided for

their payment by the contract and the supreme court reiterated the rule stated in the Templeman case, *supra.*

In the Stevinson case, *supra,* it is worthy of note that the contract provided that ''no waiver of times of payments for continuance of option shall be valid in favor of the first party unless reduced to writing and subscribed by the second party thereto.'' No comment was made by the supreme court as to this provision, but as it simply referred to the *manner* in which the waiver was to be expressed, it might properly be held that this was waived by the conduct of the vendor in receiving the overdue payments without executing said written testimonial. (*Arnold* v. *American Ins. Co.,* 148 Cal. 660 [25 L. R. A. (N. S.) 6, 84 Pac. 182].)

In *Hayt* v. *Bentel,* 164 Cal. 680 [130 Pac. 432], the action was brought by the vendee to cancel the contract and to recover the moneys paid thereunder by the plaintiff, the vendor being unable to convey a good title. The main contention of appellant was that respondent was not entitled to recover by reason of the fact that the latter had made default in the payment of the installments as they became due, but the supreme court held that the vendor by accepting the payments after they became due had waived the delay and that to put the vendee in default he would be required to tender a deed. The last expression of the supreme court on the subject is found in *Bairos* v. *Barlin,* 46 Cal. App. 665 [190 Pac. 188], wherein it was said: ''Acceptance of overdue installments of the price, on an executory contract for the sale of land waives any right to declare a forfeiture on account of the previous failures to pay when due. But such acceptance alone does not change the terms of the contract as to forfeiture for future failures, nor eliminate the provision that time is of the essence of the contract. There may be conduct and acquiescence by the vendor sufficient to *justify the inference by the court* as a matter of fact that the vendor has waived the conditions of a contract regarding a forfeiture, which he afterward claims the right to enforce, and when in such a case the waiver has continued until after all installments are due, the condition cannot be revived except by notice to the vendee.'' If that decision is to be construed as holding that notice to the vendee to revive the right of for-

feiture is required only when all the installments have be-
come due, then manifestly no such notice was required
herein, since the installments were not all due at the time
the action was brought.

However, it is the claim of respondent that if notice was
required, it was furnished by the service of the so-called no-
tice of cancellation, and *Pearson* v. *Brown,* 27 Cal. App.
125 [148 Pac. 956], is cited as authority for that position.
Therein the notice was: "This is to advise you that I have
on this day canceled your contracts for lots in the Brown
Andrade Tracts on account of nonpayment of installments
as you are now delinquent ten months and I feel that I
have carried this account long enough," etc.   After citing
*Boone* v. *Templeman, supra,* and other authorities as to
waiver by reason of accepting overdue payments, the court
said: "This statement of the rule accurately defines what
the rights of the respondent in this case were on Decem-
ber 5, 1911, the date of his letter to the appellants, in
which he assumed to cancel the appellant's contracts by rea-
son of their default in making payments according to their
terms.   The respondent was not entitled to work such can-
cellation and his said letter could not be given that effect.
The utmost effect under the foregoing rule which would
be given to it would be that of a notification to the vendees
that the vendor intended thereafter to insist upon a strict
compliance with the terms of the contracts; and that unless
within a reasonable time the vendees paid up their defi-
ciency, and thereafter made their payments strictly in ac-
cordance with the time conditions of their contracts, the
forfeiture clauses would be enforced."   The court did not
decide that this was equivalent to a notice but declared
simply that such was the *utmost* effect that could be given
to it.   Besides, the vendees did not, as does the vendee
herein, question the sufficiency of the instrument to consti-
tute such notice, but they responded immediately with an
offer of payment of all that was due.

Moreover, the decisions are to the effect that where notice
is required it must contain definite and specific warning
of an intention to enforce the forfeiture.   In *Stevinson* v.
*Joy, supra,* the court said that in case of waiver the right
of forfeiture could only be restored "by giving a definite
and specific notice of an intention to enforce it."

In *Hoppin* v. *Munsey,* 32 Cal. App. Dec. 468 (see 185 Cal. 678, 198 Pac. 379), it was said that "where a vendor has waived his right to a forfeiture given him under a contract of sale of real estate it cannot be deemed revived except upon a notice to the vendee that if he does not comply with the terms of the contract as to payments called for by the same *within a time specified therein, which as fixed must be reasonable,* the right to forfeiture would then be exercised." In that case, the notice which was held sufficient, stated: "Unless you pay up the interest amounting to $87.00 before the 10th day of March, 1917, I will have to cancel deal with you on lot."

In *J. B. Hill Co.* v. *Pinque,* 179 Cal. 759 [3 A. L. R. 669, 178 Pac. 952], it was said: "It was the settled rule at common law that a demand for payment of the exact sum due was a necessary prerequisite to a forfeiture of a lease for nonpayment of rent. (24 Cyc. 1355.) The same rule was laid down in this state at an early date (*Gage* v. *Bates,* 40 Cal. 384; *O'Connor* v. *Kelly,* 41 Cal. 434), and these decisions have never been questioned. (*Mossi* v. *Fairbanks,* 19 Cal. App. 355 [125 Pac. 1071].)" The same rule of waiver and the suspension of the right to forfeit, according to the authorities, applies with equal force to contracts of sale as to indentures of lease.

[1] Said notice of cancellation contained no demand for the payment of what was due nor did it afford any intimation that the vendor would insist upon prompt payment in the future. In fact, it was equivalent to a declaration that the contract was at an end and that no further payments would be accepted. It could not, therefore, operate as a restoration of the right to declare a forfeiture for failure to pay what was due, nor could it be considered as notice that the vendor would insist upon prompt payments in the future.

[2] But we are satisfied that, by the terms of the contract, the parties expressly covenanted that no such result as claimed by appellant would follow the acceptance of overdue payments. That the parties had the legal right to so provide is not and cannot be disputed. If the parties had expressly provided that the acceptance by the vendor of payments after they were due should not be deemed a waiver of the provision that time is of the essence of the

contract and should not be considered a relinquishment of the vendor's right to claim a forfeiture for any subsequent default on the part of the vendee, then it would not be illegal or inequitable for the vendor to insist upon forfeiture for any such subsequent default. The requirement of notice after the receipt of overdue payments without objection is based upon the equitable consideration that by his conduct the vendor has led the vendee into the belief that the former will continue to waive the strict performance of the contract. The principle of equitable estoppel is involved. But the reason for the rule does not exist where the parties have expressly agreed that such waiver shall not affect any subsequent breach or relinquish the right of the vendor to insist thereafter upon a strict observance of the terms of the contract. We think the parties could not have more effectually provided that a waiver of a breach of the contract should not be held to have occurred by reason of the forbearance of the vendor to take advantage of any prior default.

The parties could not fail to understand from the particular covenant in question that the acceptance of any overdue payment or payments was to be regarded as an indulgence to the vendee, but as to the future the whole contract remained in full force and effect and rendered the vendee subject to the penalty of forfeiture for any default thereafter. We may repeat, that the right to declare a forfeiture for the failure to pay on time is one of the covenants of the contract and hence it is a part of the agreement which the parties have in effect declared shall not be deemed waived or affected by any previous default. The case therefore stands as though there had been no belated acceptance of payments, and since there were several installments long overdue at the time the action was brought, plaintiff was clearly in default, and the right of forfeiture existed in behalf of defendant, no affirmative action being required on his part to work a cancellation. (*Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Fresno Irrigated Farms Co.* v. *Canupis*, 39 Cal. App. 184 [178 Pac. 300].)

Plaintiff also claims that there was a subsequent oral agreement by which he was granted the privilege of paying

as he could on one block at a time. As to that he testified: "I went to Mr. Coombs [respondents' agent] and asked permission to pay one at a time. He never did make a reply. I think he told me he would write to Sacramento. I understood the reply was favorable because he accepted the money. I did not go to Mr. Coombs to ascertain what kind of a reply he received, because when I went to him first I told him I wanted to pay one at a time. There was no other reply I can remember that was made." Conceding, for the purpose of the case, that the foregoing would support a finding that such agreement existed, it is sufficient to say that the finding to the contrary is amply supported by the testimony of Mr. Coombs.

As to the question of waiver the trial court further found: "It is untrue that by any act or course of conduct of defendant, plaintiff was led to believe that defendant did not intend to insist on the provision of said contract relative to forfeiture or that it had waived the provision in said contract relative to forfeiture." This is a finding of fact, as we understand it, and not a mere legal conclusion as claimed by appellant (*Bairos* v. *Barlin*, 46 Cal. App. 665 [190 Pac. 188]), and we regard it is justified by the evidence. That respondent treated appellant with great indulgence and ·extended him every opportunity to make the payments is quite apparent from the record. He was notified by letter on July 12, 1917, that there were twenty-nine delinquent installments and was requested to call at respondents' office and give information as to what he intended to do about it. But he did nothing until nine months thereafter, as we have seen, when he made a small payment on one of the lots, followed in June and July of 1918 with other payments on the same lot, aggregating $120, and nothing else was done by appellant except the payment of the small amount for taxes, until this suit was brought, nearly a year after he received said notice of cancellation, appellant thereby committing twelve other breaches of the contract before he offered to make any further payment. As suggested by respondent, plaintiff seems to have assumed that "he could wait for as long a time as he pleased and make payment whenever the spirit moved; and that in the meantime he could stand by, watching the market, and determine according as values increased or

decreased whether he would thereafter compel the company
to convey the property.'' We may add that, when he did
finally demand a conveyance, he could expect no more
favorable treatment than the offer he received from respond-
ent to credit him with all that he had paid in as payment
on one block and upon receipt of the balance due to exe-
cute to him a conveyance of said block.

We think there is no merit in the claim that the findings
do not support the judgment. They show the execution of
said written contracts, that they were not superseded or
modified by any other agreement, that plaintiff had failed
to make payments as claimed by respondent, that there was
no waiver of any of the terms of said contracts, and
that plaintiff was in default and had been for months at
the time the suit was brought. It is true that there was no
specific finding that such notice as to the amount due
and demand for its payment within a specified time and
notice that defendant would thereafter insist upon prompt
payment, as appellant insists upon, was given, but as be-
fore indicated, we deem this immaterial under the contracts
of the parties. The forfeiture followed as a consequence
of plaintiff's default and it was sufficient to claim it in
the answer.

We think the judgment should be affirmed, and it is so
ordered.

Finch, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied
by the supreme court on November 23, 1922.

All the Justices present concurred.