[Sac. No. 4108. Department One.—December 19, 1928.]

UNIVERSAL MILK COMPANY (a Corporation), Respondent, v. DALE E. WOOD, Appellant.

Feemster & Cleary for Appellant.

R. W. Palmer, M. T. Neff and Orrick, Palmer & Dahlquist for Respondent.

PRESTON, J.—Plaintiff corporation sued defendant to quiet title to certain real property upon which is situated a plant to manufacture the by-products of milk. Ownership, possession, and right of possession were alleged, to which the defendant replied by admitting ownership and possession but denying the right of possession in plaintiff and setting up a written indenture of lease between the parties as the basis of his claim to the right of possession. Defendant also cross-complained in an action in ejectment, again setting up said lease and alleging that plaintiff wrongfully ejected him from the premises on the twenty-eighth day of December, 1925, and praying for restoration of the premises to him, together with damages at the rate of $500 per month for the time said premises had been withheld from him. Plaintiff answered said cross-complaint, admitting that it resumed possession of said property on the said date, denying that it forcibly or unlawfully ejected cross-complainant, denying the claim for damages and alleging that on the thirteenth day of November, 1925, cross-complainant was in default with respect to the obligations undertaken to be performed under said lease in the sum of $155.50, this item relating to earthquake insurance on said plant as provided in said lease; that on said day said cross-defendant gave cross-complainant written notice of said default and made demand for the payment of said amount; that same was not paid or any part thereof and thereafter and on the twenty-second day of December, 1925, notice was given the cross-complainant of the cancellation and termination of said lease and thereafter and on the twenty-eighth day of December, 1925, cross-defendant repossessed said premises in accordance with the terms of said lease; and praying that cross-complainant take nothing by the action. Cross-defendant, also as a part of its said answer, alleged a counterclaim against said cross-complainant for the sum of $182.34, which amount included said item of $155.50 above referred to, and for the further sum of $659.75 on account of taxes which said cross-complainant had agreed to pay by the terms of said lease, making a total claim of $842.09. The prayer of cross-defendant was that cross-complainant take nothing by the answer and that it have judgment upon its counterclaim for the said sum of $842.09.

The court below, after a trial of the action, made its findings of fact, conclusions of law, and gave its judgment, all of which were in favor of plaintiff, both as to its title and right of possession and as to said counterclaim. The court found, among other things, that on the thirteenth day of November, 1925, cross-complainant was in default as to said item of $155.50; that written notice was on that day given of said default; that thereafter, said default continuing, plaintiff did on the twenty-second day of December, 1925, give written notice of the cancellation and termination of said lease; that thereafter and on the twenty-eighth day of December, 1925, plaintiff repossessed said property in accordance with the consent of defendant and cross-complainant and after said resumption of possession on said day, plaintiff occupied and still occupies said premises and the whole thereof. The court made a special finding to the effect that said re-entry was by consent and as a result defendant suffered no damages and that said re-entry was not made with malicious intent. From said judgment defendant has appealed. The complaint was filed on June 26, 1926, and the cross-complaint on September 27, 1926.

The appeal is determined by a proper construction of certain provisions of said lease of July 30, 1925, the material portions of which provided that the term of lease was to be for a period of ten years beginning August 1, 1925, and ending July 31, 1925; that the rental for the first year was to be only payment by the lessee of what are called "carrying charges," this term including all taxes, insurance, water rates, repairs on buildings and machinery, improvements, and all up-keep of the properties; that as rental for the second year, said carrying charges were to be paid and in addition the sum of $2,400, and for the succeeding years, other amounts of money were to be paid in addition to said carrying charges. Said lease then contained the following provision: "Time is hereby made of the essence and if default should be made with regard to any of the covenants, terms, conditions or agreements provided to be kept, performed and observed by the Lessee, then and from thenceforth it shall be lawful for the Lessor to re-enter the said leased premises and to remove all persons

therefrom and to repossess and enjoy the said premises as in its former estate, after giving said Lessee thirty days written notice of said default.''

The record discloses the further facts to be that defendant resided at Los Angeles; that he was a dealer in leases and was not familiar with the operation of a plant such as the one here involved and he evidently had in mind a sale of the lease without any intention on his part of operating the plant. In other words, it was as to him a pure speculation. Between August 1, 1925, and December 22d following, he made no effort to operate the plant and visited it only about five times during that period. He hired a caretaker, who was a witness in the case, at $75 per month; he then reduced his salary to $25 per month; then he refused to pay him anything, offering him as compensation the use of the house on the property as a residence, saying that if that was not satisfactory, he was to surrender the keys and move from the place. Defendant in reality did not pay the caretaker all the sums due him; he failed to keep the water-tanks for fire protection in proper condition and also failed to keep the stand-by power on, as required by the lease, same being shut off at times because of his failure to pay the necessary charges therefor. Moreover, defendant has never paid or offered to pay any of said carrying charges called for by said lease. Neither in his answer nor in his cross-complaint does he make reference to this failure on his part nor did he at any time or place offer nor does he now offer to pay any of said charges. He wrote, admitting his inability to perform his covenants under the lease and admitted a practical abandonment of effort to do so. As a part of his plea in his cross-complaint, however, he prays for the sum of $500 per month, without so much as giving credit on the amount so claimed for the charges due from him by the terms of said lease during the time he was in possession of the property. In short, he has done nothing entitling him from a moral standpoint to any consideration whatsoever. He nevertheless asserts his technical eviction and his consequent claim to restoration of possession, even though it is but to admit him to the back door that he may be expelled through the front gate.

■ The contention offered is that the right to possession could only be terminated by supplementing the other notices with the three-day notice found in section 791 of the Civil Code, incorporating the provisions of sections 1161 and 1162 of the Code of Civil Procedure; that a failure to give this notice left the lease still subsisting and the measure of the rights of the parties. This assumption is based upon a misconception of the lease and a consequent misapplication of legal principles. The lease itself by the above quoted provision provides a forfeiture of the rights of the lessee upon failure to pay the charges stipulated. The notice of default, the lapse of thirty days and notice of forfeiture completed the process. The rights of the lessee under said lease became extinct and nothing he could do would restore vitality to the instrument. Neither a further three-day notice nor any other notice would be of advantage to him, for at best it would but lay the foundation to hasten his departure from the premises. When this forfeiture became effective, an election of remedies was open to respondent. It could proceed in unlawful detainer under the summary provisions of the Code of Civil Procedure or else it could seek one of the general remedies offered by law. If it had chosen the former, then only would it be concerned with the provisions of section 791 of the Civil Code as to further notice. But as it appealed only to the general remedy afforded by the law, it was not required to concern itself with further notice. The essence of the issue made by the pleadings is the right of possession of the premises. Respondent asserted his right and appellant by both answer and cross-complaint asserted its right. The issue is the equivalent of an action for possession of the property. (Code Civ. Proc., sec. 380.) This right is especially reserved by section 793 of the Civil Code and would exist anyway, independent of the procedure contemplated under section 791 of the Civil Code. There is, therefore, no need for a full discussion of the somewhat complex state of the decisions on the applicability or nonapplicability of the three-day notice in unlawful detainer actions. This is no such action. Abundant authority exists for the distinction we have here drawn. (See *McCarthy* v. *Yale*, 39 Cal. 585, 587; *Martin* v. *Splivalo*, 56 Cal. 128; *Joy* v. *McKay*, 70 Cal. 445 [11 Pac. 763]; *McKissick* v. *Ashby*, 98 Cal. 422, 425

[33 Pac. 729]; *Sauer* v. *Meyer*, 87 Cal. 34, 36 [25 Pac. 153]; *Mossi* v. *Fairbanks*, 19 Cal. App. 355, 358 [125 Pac. 1071]; *Wickstrom* v. *McGrath*, 86 Cal. App. 651 [261 Pac. 326]; *Williams* v. *Edge*, 192 Cal. 254 [219 Pac. 747]; *Andrews* v. *Russell*, 85 Cal. App. 149 [159 Pac. 113]; *Allen* v. *Hour* (Wyo.), 219 Pac. 581; 36 C. J. 617; 16 R. C. L., sec. 663, p. 1143.) This is not a case where the lease does not provide a forfeiture and the provisions of sections 1161 and 1162 of the Code of Civil Procedure must be resorted to to work a forfeiture for failure to pay the rental provided. (*Standard Livestock Co.* v. *Pentz*, 204 Cal. 618 [62 A. L. R. 1239, 269 Pac. 645].)

█ The intimation that respondent comes into a court of equity with unclean hands is not worthy of consideration. It found the property practically unoccupied and in addition thereto it had every right to believe that appellant had abandoned or was about to abandon the premises and that there would be no objection to re-entry thereupon. This is borne out by appellant's failure to pay and by his conduct with reference to the premises and by his admission in a letter dated December 21, 1925, where he states: " . . . I have been unable to take care of the insurance and taxes, and cannot see my way clear at this time to do so. I just returned from San Diego, where I had it out with my brother, and we cannot get together. I feel that the way I have been drawn into this affair and put in over $300.00, that I should be reimbursed by you to this extent. I do not care to stand in the way of any further prospects you may have in this matter. . . . "

Further discussion of this case seems unnecessary. Judgment affirmed.

Curtis, J., and Seawell, J., concurred.