[Civ. No. 19359.   First Dist., Div. One.   July 20, 1961.]

EILEEN M. BUDAEFF, Individually and as Trustee, etc., et al., Respondents, v. GOTTLIEB HUBER et al., Appellants.

Arthur M. Lebow and Sydney P. Murman for Appellants.

Thomas B. Gallen for Respondents.

DUNIWAY, J.—Respondents, plaintiffs below, obtained a judgment in an action in ejectment, and defendants appeal. Respondents were landlords and appellants were tenants under a written lease. The action was for possession and past due

rents, and the judgment substantially follows the prayer of the complaint. It is claimed that the judgment must be reversed for the following reasons: (1) The evidence does not support the findings as to a demand for the rent; (2) the evidence does not support the finding that respondents did not waive their right to terminate the lease; (3) the court erroneously failed to make findings as to respondents' bad faith; (4) the court should have held that the complaint did not state a cause of action; (5) the court erred in excluding certain evidence. We conclude that the judgment should be affirmed.

The lease is dated July 24, 1954, and is for a term of five years, with an option, "at the expiration of the five years of this Lease" to renew for an additional five years. So far as appears, no attempt was made to exercise the option. Judgment was entered July 30, six days after the original term expired. The rent is $225 per month, payable monthly in advance on the 11th of each month. The lease also provides that in the event of failure to pay rent, the lessors may reenter, that the waiver of breach of any covenant or condition shall not be a waiver of any subsequent breach of the same or any other covenant or condition, for reasonable attorney's fees in the event of suit for rent or breach of covenant, and that the lease is conditioned upon performance of its covenants.

The property was let for use as a rooming house, and is located in a part of San Francisco that became subject to redevelopment. As a result, according to appellants, they lost roomers and were not taking in enough to enable them to pay the rent. However, no agreement was ever made to reduce the rent or waive any part of it. The rent first became delinquent, so far as the record shows, on February 11, 1957. Continuously thereafter, there was some delinquency although a few payments were made, and several written demands for the rent were made. On March 4, 1958, respondents advised appellants, by letter, that the rent then due, from August 11, 1957, amounted to $1,575, and stated that "unless payment can be made . . . you will compel us to file suit to collect same." It is conceded that, as of that date, this was a sufficient demand.

On March 14, by which time another payment had accrued, $225 was paid, which left the same total of delinquency. This was acknowledged by respondents on March 19, by a letter stating "Negotiations are now being made for purchase of the property by the Redevelopment Agency in San Francisco and we are proceeding with the sale of the property. This will

take at least another month or more before we can consummate the sale. When we get into the negotiations, we will inform you of the amount of money that will be allowed the lessees.'' On May 26, another $225 was paid but by that time two more installments were due and the net delinquency had risen to $1,800. On July 23, a similar payment was made, leaving a net delinquency of $2,025. On July 30, respondents wrote to appellants, stating that there was then rent due, ''at $225.00 per month from November 11, 1957, to July 11, 1958, 8 months, or the sum of $1,800.00.'' Actually, the period was nine months and the delinquency $2,025. The letter also stated: ''We are now in a position to negotiate further with you by accepting an assignment of what would be allowed you for cancellation of the lease from the Relocation Agency now being processed, by the Redevelopment Area.''

This was followed after another rent day had passed, by a letter dated August 28, reading as follows: ''We are proceeding with the sale of the property to the Redevelopment Agency of the City and County of San Francisco and in this connection we are enclosing a copy of our letter to Mr. George Maharis.

''We understand that the Agency will provide for some expenses in moving the furniture and furnishings from the hotel to the new location.

''As you know, there is a Chattel Mortgage that has been executed as security for the lease and upon receipt from you of the sum of ten months rental or $2,250.00, we will be willing to cancel the lease agreement and release the chattel Mortgage.''

No more rent was paid. On October 19, written notice was sent to appellants stating that respondents ''have exercised the right of re-entry'' given them by the lease, for failure to pay rent, and demanding possession. The notice did not state the amount of rent then due, or demand its payment. The action was filed on October 23, and the complaint alleged that rent was due and owing in the sum of $2,475. The answer admits this allegation.

The complaint was amended, and, as amended, alleged that ''plaintiffs on the date of the first default in payment of rent . . . and on numerous due dates and other dates thereafter, made demand upon defendants for payment of the exact sum of rent then due.'' To these allegations, appellants demurred generally and specially on the grounds that the dates and amounts of the demands did not appear, nor could it be ascer-

tained whether the demands were oral or written. The demurrer was overruled, and, by answer, appellants denied the demands and pleaded a failure ''to make demand upon the defendants for payment of the exact amount of rent which they claim to be due and payable.'' They also pleaded waiver by appellants of their right to forfeit the lease, and that the complaint did not state a cause of action. They alleged that on November 17 they tendered to appellants the $2,475 due up to October 11, plus $450 for the months of November and December, which tender was refused. They admitted receipt of the written notice of exercise of right of reentry, and that they were still in possession.

The court made findings in accordance with the complaint and against the denials and affirmative allegations and defenses of the answer. It thus found that appellants were not ready, willing or able to pay the overdue rents, that the tender as alleged was not made, and that rejection of the offer was not made with the intent illegally, inequitably and fraudulently to claim a forfeiture. It found that rent of $2,700 was overdue up to October 11; that appellants still remained in possession and refused to surrender possession, that respondents had suffered damage of $1,575 for the detention from October 19, 1958, to May 19, 1959, and that such damage would continue at $7.50 per day thereafter. It did not award attorney's fees. A motion for new trial was made and denied.

A witness for respondents, Mr. Daneri, trust officer of respondent bank, testified, in substance, that he did not agree with appellants to reduce the rent, or to waive payment, and that the reference in the letters that we have quoted to payments by the Redevelopment Agency was to payments for the costs to be incurred by appellants in moving out, which he had discussed with them and which moneys respondents should receive in part payment of the rent. Throughout the period when the rent was delinquent appellants collected rents from their subtenants and used the moneys for their own purposes. There is also evidence that the reasonable rental value of the premises is $225 per month, the amount reserved in the lease, and that the delinquency in rent when the action was filed ''more than offset whatever interest [appellants] may have in the leasehold interest.'' Mr. Daneri testified that respondents' agreement with the Redevelopment Agency required delivery of title free of any leasehold interest but that that was not ''the real reason for this lawsuit.''

■ 1. *Failure to demand the precise amount of rent unpaid when the notice of election to terminate was given is not, under the facts of this case, a ground for reversal.*

The court found that the allegations as to demands, quoted above, are true. The evidence supporting this finding is set out above. We think it sufficient.

It is appellants' position that the demands thus shown are insufficient and they rely on the following line of cases: *Gaskill* v. *Trainer*, 3 Cal. 334, 339-340 (no demand ever made); *Chipman* v. *Emeric*, 3 Cal. 273, 283 (similar); *McGlynn* v. *Moore*, 25 Cal. 384, 397 (only one demand, on date rent fell due, technically insufficient); *Gage* v. *Bates*, 40 Cal. 384 (failure to state precise sum due); *O'Connor* v. *Kelly*, 41 Cal. 432 (similar); *Sauer* v. *Meyer*, 87 Cal. 34, 37 [25 P. 153] (premature demand); *Ciapusci* v. *Clark*, 12 Cal.App. 44, 53 [106 P. 436] (no demand); *Mossi* v. *Fairbanks*, 19 Cal.App. 355 [125 P. 1071] (no demand); *J. B. Hill Co.* v. *Pinque*, 179 Cal. 759 [178 P. 952, 2 A.L.R. 669] (demand on due day, amount not specified; dispute as to amount); *Lydon* v. *Beach*, 89 Cal.App. 69, 74 [264 P. 511] (decided under Code Civ. Proc., § 1161; notice and demand premature); *Johnson* v. *Sanches*, 56 Cal.App.2d 115 [132 P.2d 853] (dictum—decided under Code Civ. Proc., § 1161; demand for more than was due); *Dertiman* v. *Almey*, 92 Cal.App.2d 724 [207 P.2d 615] (similar); *Werner* v. *Sargeant*, 121 Cal.App.2d 833, 837 [264 P.2d 217] (similar). All of these cases do stand for the proposition that a demand for the exact sum due is a condition precedent to a forfeiture by the landlord, absent a contrary provision in the lease, or a waiver of demand by the tenant.

The reasons for the rule are said to be: (1) that forfeitures are not favored (Civ. Code, § 1442; *Sauer* v. *Meyer, supra,* 87 Cal. 34, 37; *Mossi* v. *Fairbanks, supra,* 19 Cal.App. 355); (2) that the landlord can protect himself by providing for a waiver of demand in the lease (*Mossi* v. *Fairbanks, supra,* at p. 358); (3) that it is no hardship on the landlord to require the demand (*Mossi* v. *Fairbanks, supra,* at p. 359); (4) that such a demand was required at common law. It is also held that Civil Code, section 793, does not change the rule. It does not require, in an action in ejectment, the three days' notice required in unlawful detainer (Civ. Code, § 791), but does not eliminate the requirement of a demand. It is further stated that the demand must be made "upon or after the last day which the lessee has to pay" (*Sauer* v. *Meyer, supra,* 87

Cal. at p. 37); that it must be for "the exact sum due" (*J. B. Hill Co.* v. *Pinque, supra,* 179 Cal. 759, 761) and that a waiver of demand will not be implied (*Gaskill* v. *Trainer, supra,* 3 Cal. 334, 340; *J. B. Hill Co.* v. *Pinque, supra,* at p. 763).

We think that there is another, and more basic, reason for the rules laid down in these cases, fairness to the tenant. It is optional with the landlord to forfeit; he can, if he chooses, enforce the terms of the lease, leaving it in full force. There may be indulgence granted by him as to either the amount of rent to be paid or the time of payment. There may be dispute as to how much is owing, as in *J. B. Hill Co., Johnson Dertiman* and *Werner, supra,* or as to when it is owing, as in *Sauer, supra.* In such cases elementary fairness requires that the landlord demand the precise sum due, so that the tenant will know what he must do to avoid the forfeiture.

The situation before us is different. Here, the landlord made repeated demands for the rent, beginning as early as April 8, 1957. The March 4, 1958, demand was for the precise sum then due. Thereafter the amount owing rose. Following the three payments made after that date, the landlords twice again advised the tenants of the amount due—once on July 30 and once on August 28. The tenants paid no more rent. The monthly amount accruing was known, and simple arithmetic would tell them how much was due in September or October. That they had no difficulty in computing it is shown by the admission in their answer.

It is no longer true that the demand must be made on the premises, late in the afternoon of the due date. Such highly formalistic requirements have long since been discarded. (*Mossi* v. *Fairbanks, supra,* 19 Cal.App. 355, 357.) Appellants cite no case, and we know of none, holding that demand must immediately be followed by an exercise of the landlord's right to forfeit. Such a rule would put a premium upon harsh conduct by the landlord, and would give an unfair advantage to the tenant whose landlord is more indulgent, as respondents were in this case. We do not mean that there will not be cases in which a landlord must, by reason of intervening circumstances, make a new demand before declaring a forfeiture. The doctrine of waiver, hereafter discussed, will often compel such a requirement. But we can find no equities here that compel such a requirement, and we decline to compel it for reasons of formalism alone.

In any event, it seems clear that when a demand is

made, the landlord need not immediately file suit, but may, when he does sue, recover rent that has accrued in the interval. Thus in *Cavanaugh* v. *High,* 182 Cal.App.2d 714 [6 Cal.Rptr. 525], rent became delinquent September 25; it was demanded November 20; suit was filed January 2, and the complaint alleged accrual of rent for three additional months, on October 25, November 25, and December 25. This was held proper, and it may be noted that when the demand for the September 25 rent was served, another month's rent had accrued, so that, while the demand correctly stated the exact amount of rent due on September 25, it did not correctly state the exact amount due on November 20, when demand was made.

Moreover, the decisions of our courts recognize that there is a substantial difference between an action in ejectment (Civ. Code, § 793) and an action for unlawful detainer (*Samuels* v. *Singer,* 1 Cal.App.2d 545, 548-551 [36 P.2d 1098, 37 P.2d 1050]), the latter being a summary remedy in which treble damages may be recovered (Code Civ. Proc., § 1174). There is a line of such cases holding that when the tenant, in the lawsuit, not an action in unlawful detainer, contests the right of the landlord to possession, demand for performance is waived. (*Williams* v. *Edge,* 192 Cal. 254, 255 [219 P. 747]; *Calhoma Oil Corp.* v. *Conniff,* 207 Cal. 648, 651 [279 P. 771]; *Mailhes* v. *Investors Syndicate,* 220 Cal. 735, 738-739 [32 P.2d 610]; *Andrews* v. *Russell,* 85 Cal.App. 149, 154 [259 P. 113]; *Stetson* v. *Orland Oil Syndicate, Ltd.,* 42 Cal.App.2d 139, 143 [108 P.2d 463]; *Reserve Oil & Gas Co.* v. *Metzenbaum,* 84 Cal.App.2d 769, 775 [191 P.2d 796]; *Valer Oil Co.* v. *Souza,* 182 Cal.App.2d 790, 799 [6 Cal.Rptr. 301].) These cases do not involve nonpayment of rent, but other breaches by tenants. However, *Universal Milk Co.* v. *Wood,* 205 Cal. 751 [272 P. 745], does involve such a breach, as does *Cavanaugh* v. *High, supra,* 182 Cal.App.2d 714, 721, and they cite and follow some of the foregoing cases.

2. *The court correctly found that there was no waiver by respondents of their right to forfeit.*

Waiver is the intentional relinquishment of a known right; as such, it is normally a question of fact. We find nothing in this record that compels a conclusion that respondents waived their right to forfeit, even assuming that the letters of March 19, July 30, and August 28 would sustain a contrary finding if it had been made. It is true that in many

cases the law will imply a waiver of the right to forfeit when the landlord accepts payments of rent following a breach (*Jones* v. *Maria,* 48 Cal.App. 171 [191 P. 943]; where rent accruing after the demand was accepted; *Group Property, Inc.* v. *Bruce,* 113 Cal.App.2d 549 [248 P.2d 761], involving a covenant to make improvements; *Schnittger* v. *Rose,* 139 Cal. 656 [73 P. 449]—covenant to make wine; *Ciulla* v. *Telschow,* 152 Cal.App.2d 597 [313 P.2d 188]).

Here, we deal with a continuing covenant, and one that is basic to the tenancy, the covenant to pay rent. At no time after the March 4, 1958, demand was the total rent due less than the amount then demanded. A landlord may properly be held to waive tardiness in payment. Here, however, following the three payments that were made, the landlords asserted the balance then due, both on July 30 and on August 28, and no more payments were made. The rent was never current after March 4, and the delinquency was mounting. It would be a perversion of the decisions holding that the acceptance of rent, following a breach, is a waiver of the right to forfeit for that breach, to apply them to these facts. (*Cf. Myers* v. *Herskowitz,* 33 Cal.App. 581 [165 P. 1031].)

Under the terms of the lease, the agreement to pay rent is both a covenant and a condition. Being a continuing covenant, each breach, not thereafter waived, is itself a basis for forfeiture. The most that can be said here is that the breaches occurring on August 11, September 11, and October 11, 1957, were waived when the payments of March 14, May 26, and July 23, 1958, were accepted. (*Cf. Silva* v. *Campbell,* 84 Cal. 420, 422 [24 P. 316].) There were still uncured—and unwaived—breaches for each month beginning on November 11, 1957. It has been repeatedly held that waiver of a particular breach of the covenant to pay rent, or of any other continuing covenant, does not waive subsequent similar breaches. (*Extension Oil Co.* v. *Richfield Oil Corp.,* 52 Cal. App.2d 105, 108-109 [125 P.2d 895].)

Furthermore, in this case, the lease expressly provides against a waiver, and such a provision has been upheld and applied. (*Brown* v. *Chowchilla Land Co.,* 59 Cal.App. 164, 170-171 [210 P. 424].)

3. *The court properly found against appellants' charge of bad faith.*

In the pleadings the only charge of bad faith appears in paragraph II of the answer. The court found these allegations

to be untrue. It was not required to make a finding in language proposed by appellants, particularly since the evidence sustains the findings made by the court. The mere fact, if it be a fact, that a motive for bringing the suit was to clear the title for the purpose of a sale to the Redevelopment Agency would not, as a matter of law, constitute illegal, inequitable or fraudulent conduct.

It is of course true, as appellants contend, that when leased property is condemned the lessee is entitled to be paid the value of his leasehold. (*Kishlar* v. *Southern Pacific R. R. Co.,* 134 Cal. 636 [66 P. 848] ; *City of Pasadena* v. *Porter,* 201 Cal. 381 [257 P. 526, 53 A.L.R. 679] ; *People* v. *Klopstock,* 24 Cal. 2d 897 [151 P.2d 641] ; *Orton* v. *Daigler,* 133 Cal.App. 112 [23 P.2d 831] ; *Carlstrom* v. *Lyon Van & Storage Co.,* 152 Cal.App.2d 625 [313 P.2d 645].) Appellants knew that the property was to be either sold to the agency or condemned by it. They were seriously in default in payment of the rent. The only testimony on the subject in the record indicates that the leasehold had no value. If, as they now claim, the leasehold interest had value, the only prudent course would have been to pay the rent, thus protecting their interest. But the evidence, including the testimony of one of the appellants, indicates that they preferred to speculate on the outcome by not paying the rent and hoping to be ''allowed a settlement'' when the property was taken. If there was bad faith, it would appear to be as much that of appellants, as of respondents. (*Cf. Universal Milk Co.* v. *Wood, supra,* 205 Cal. 751, 754; *Brown* v. *Chowchilla Land Co., supra,* 59 Cal.App. 164, 172.)

*Strom* v. *Union Oil Co.,* 88 Cal.App.2d 78 [198 P.2d 347], upon which appellants rely, does not help them. In that case, for the purpose of bringing about a forfeiture, the landlords deliberately tried to make it impossible for the tenants to pay the rent. No such thing occurred here.

▆▆▆ Nor does the rejection of the ''tender'' that appellants made by letter, unaccompanied by payment, and conditioned upon dismissal of the action, after the action was brought, compel a finding of bad faith. It did not extinguish the debt, since the procedure prescribed by Civil Code, section 1500, was not followed. Nor was there a showing of continuous readiness to pay after the tender. (*Webb* v. *Jones,* 88 Cal.App. 20, 29 [263 P. 538].) At the time that appellants made their offer, respondents had elected to forfeit the lease and had filed suit. If they had accepted the offer, they would

have waived their right to forfeit. (*Jones* v. *Maria, supra,* 48 Cal.App. 171, 173.) ▇ As that case points out, a landlord who elects to forfeit must thereafter follow a course consistent with his claim in the further progress of the proceeding that he has instituted; otherwise he will be held to have waived the forfeiture. The offer, assuming its sufficiency in other respects, came too late.

4. *The complaint stated a cause of action.*

The authorities and principles discussed under point 1, *supra,* dispose of this contention, which relates solely to the demand. Any uncertainty in the pleading was cured by the testimony received at the trial, and it would be idle to reverse on that ground. (Const., art. VI, § 4½.)

▇ 5. *The court did not err in excluding evidence.*

This contention relates to a letter, written to Mr. Daneri by appellants' counsel, on October 11, 1958, containing hearsay and self-serving statements, and suggesting a conference. The court excluded it, but in doing so said to counsel "[b]ut, however, it does not preclude you from testifying if you desire to do so." No testimony on the matter was offered. There was no error. It is claimed that the letter is not hearsay because it establishes appellants' good faith and motives. It could only do this if the statements it contained were accepted as true.

Affirmed.

Bray, P. J., and Tobriner, J., concurred.