[Civ. No. 3021.   Fourth Dist.   May 13, 1942.]

EXTENSION OIL COMPANY (a Corporation), Respondent, v. RICHFIELD OIL CORPORATION (a Corporation), Appellant.

H. L. Dunnigan and Louis J. Irving for Appellant.

W. C. Shelton and George W. Burch, Jr., for Respondent.

MARKS, J.—This is an appeal from a judgment quieting plaintiff's title to forty acres of land in Kern County and for the value of the oil, gas and gasoline produced from the property by defendant after October 24, 1938.

Plaintiff is the owner of the land in question. On March 8, 1923, it entered into an oil lease whereby the property was leased to W. J. Grindle. There were several successive transfers of the lessee's interest which finally vested in defendant.

The lease was for twenty years and as long thereafter as oil and gas be produced in paying quantities. It provided "that in the event oil is discovered in the above mentioned well (the first) in paying quantities the lessee agrees to drill continuously thereafter on said leased premises, with an intermission allowed of not more than sixty (60) days from the completion of one well until the beginning of another, until eight (8) wells shall have been drilled to a depth of thirty-three hundred feet, or to oil in paying quantities at a lesser depth."

The lease contained the following forfeiture clause:

"That in the event of violation or default of any of the covenants, conditions or agreements herein contained, on the part and behalf of the lessee to be observed and performed, and the continuance of such violation or default for a period of thirty (30) days after service of written notice by the lessor upon lessee specifying the covenants, conditions or agreements so violated, or particulars in which said lessee is so in default, then, at the option of the lessor, this lease and all rights and provisions hereunder acquired shall be forfeited and the lessor shall have the right at any time hereafter to enter upon said lands and premises and remove all parties therefrom, and take and have the same as in its first and

former state, free and clear of all claims and demands on the part of the lessee and those claiming any rights under him, and this lease and privilege shall be at an end, and thereupon the lessee or those claiming under him shall peaceably surrender and quit possession of all of said demised premises.''

Four wells were drilled on the property all of which produced oil in paying quantities. In 1928 the then lessee had not drilled the fifth well, according to the lease, and a contract was entered into to suspend drilling operations for one year on the payment of $1,000 per month to plaintiff. Extension for a longer period could be given under certain conditions. This agreement expressly provided for a revivor of the drilling and forfeiture clauses of the lease at the end of the extension period and that, except as to the extension, all the terms of the lease should remain in full force and were ratified and confirmed.

Plaintiff was paid the monthly rental for twenty-six months and the lessee commenced drilling the fifth well which was completed on August 30, 1930. This well produced oil for about six years but no other wells were drilled.

On September 6, 1938, plaintiff served on defendant a written notice of its default in failing to drill eight wells on the property, requiring that default to be remedied by resuming drilling operations within thirty days or suffer cancellation of the lease. As drilling was not resumed, plaintiff, on October 24, 1938, served notice of cancellation of the lease and demanded possession of the leased premises which defendant failed to give but remained in possession and continued to produce oil, gas and gasoline from the leased property.

Plaintiff was paid its royalties under the lease up to the time of its cancellation but refused to accept them thereafter. Defendant urges that the acceptance of these royalties for several years after drilling had stopped amounted to a waiver of default and estopped plaintiff from cancelling the lease. This is the sole question presented on this appeal.

It is clear from the lease that plaintiff had the right to require the lessee to continue drilling operations after the expiration of sixty days after the completion of well number five, and that the lessee was in default in failing to start drilling the sixth well in accordance with the terms of the lease. Under the clear terms of the lease that default did not in itself work a forfeiture. As a necessary step towards a

forfeiture plaintiff was required to serve a written notice on the lessee of failure to perform. If the lessee did not cure the default within the thirty days the right of forfeiture then arose. (*Jameson* v. *Chanslor-Canfield Midway Oil Co.*, 176 Cal. 1 [167 Pac. 369].)

It is well settled that acceptance of rents after a forfeiture of a lease has been accomplished will waive the forfeiture. (*Jones* v. *Maria*, 48 Cal. App. 171 [191 Pac. 943]; *Kern Sunset Oil Co.* v. *Good Roads Oil Co.*, 214 Cal. 435 [6 P. (2d) 71, 80 A. L. R. 453].) Also, acceptance of rents after a known default, as a general rule, is a waiver of the past default, but whether or not it is a waiver of a future breach generally may depend on the nature of the duty to be performed and the form of the contract.

It is well established in California as a general rule that where there is a single and not a continuing covenant or condition in a lease that is breached by the lessee, the acceptance of rents by the landlord after knowledge of the breach is a waiver of the breach which prevents a forfeiture of the leasehold estate. (*McGlynn* v. *Moore*, 25 Cal. 384; *Kern Sunset Oil Co.* v. *Good Roads Oil Co., supra; Jones* v. *Maria, supra; Inman* v. *Schecher*, 86 Cal. App. 193 [260 Pac. 605].) It is equally well settled that, ''Where the conditions are continuing in their nature, such as covenants for the payment of rent at stated intervals or for the carrying on of only certain kinds of business in the demised premises, or against subletting without written consent, the consent to or waiver of a breach does not preclude the right of the lessor to proceed against the lessee for subsequent breaches. (*Jones* v. *Durrer*, 96 Cal. 95 [30 Pac. 1027]; *Seaver* v. *Colburn*, 10 Cush. 324; Taylor on Landlord and Tenant, sec. 501.)'' (*German-American Savings Bank* v. *Gollmer*, 155 Cal. 683 [102 Pac. 932, 24 L. R. A. (N. S.) 1066].) It therefore becomes important to determine the nature of the covenants contained in the lease and whether the obligation of the lessee and his successors to drill eight wells on the leased property at successive intervals was a single and entire covenant that was waived by acceptance of royalties after the original breach or was a continuing covenant under which the acceptance of royalties would waive past but not future breaches.

The early case of *McGlynn* v. *Moore, supra,* laid down this rule which has been followed in subsequent cases without deviation:

"A covenant to pay rent by instalments, to keep the premises in repair, to keep them insured, to pay the taxes, to properly cultivate the land, and many others that indicate or necessarily imply the doing of the stipulated acts successively, or as often as occasion may require, are continuing covenants; but the covenant to repair or insure on or before a time certain, or forthwith, to pay a gross sum as rent for the term, or not to assign the lease, and others of a like character, are not continuing covenants, because the parties contemplated by such covenants, to provide for the doing or the omission of a single act."

The following cases illustrate those various covenants which have been held to be continuing covenants and apply the rule announced in the McGlynn case: *Jones* v. *Durrer, supra; Stevinson* v. *Joy,* 164 Cal. 279 [128 Pac. 751]; *Woodard* v. *Glenwood Lumber Co.,* 171 Cal. 513 [153 Pac. 951]; *Myers* v. *Herskowitz,* 33 Cal. App. 581 [165 Pac. 1031]; *Matthews* v. *Digges,* 45 Cal. App. 561 [188 Pac. 283]; *Mulborn* v. *Montezuma Improvement Co.,* 69 Cal. App. 621 [232 Pac. 162]; *Kendis* v. *Cohn,* 90 Cal. App. 41 [265 Pac. 844]; *John* v. *Elberta Oil Co.,* 124 Cal. App. 744 [13 P. (2d) 538]; *Bank of America* v. *Casady,* 15 Cal. App. (2d) 163 [59 P. (2d) 444].

With the rules announced by the foregoing cases before us we must return to a consideration of the drilling requirements of the lease to determine if the obligation to drill eight wells was single and entire or was a continuing obligation that rested on defendant. If the obligations were single, then the acceptance of royalties after the breach would waive it under the facts here. If the obligations were continuing, the acceptance would waive past but not future breaches and the judgment cancelling the lease must be affirmed.

It is clear that the lease required the drilling company to start the drilling of the sixth well within not more than sixty days after the completion of well number five on August 30, 1930. Admittedly this was not done. There was no time limit specified within which any one well was required to have been completed. There also remained the obligation resting on the drilling company to start and complete wells number seven and eight allowing not more than sixty days to intervene between the completion of the preceding well and the commencement of drilling the succeeding well. No

definite time for completing well number six or starting or completing wells number seven and eight can be found in the contract. If the obligation "to properly cultivate the land" is a continuing covenant, as held in *McGlynn* v. *Moore, supra,* certainly the covenant found in the lease before us "to drill continuously" after oil was discovered in the first well must be held to be a continuing covenant. It is clear that the contract before us indicates and specifically provides for "the doing of the stipulated acts successively, or as often as occasion may require, [and that they] are continuing covenants." (*McGlynn* v. *Moore, supra.*)

What was said in *Woodard* v. *Glenwood Lumber Co., supra,* is particularly applicable here:

"Here the lumber company's cessation of work took place in July, 1908, and the alleged rescission was not made until two years later. But the obligation to cut down the timber, manufacture it into lumber and ship it, was a continuing covenant. Every day's failure, without justification, to resume operations was a new breach of the contract, and the fact that plaintiff may have waived the breach up to a given time did not preclude him from asserting a subsequent breach. (3 Page on Contracts, sec. 1496; *Jones* v. *Durrer,* 96 Cal. 95 [30 Pac. 1027].) Furthermore, while the plaintiff is obliged to rescind promptly, the defendant cannot rely upon delays which have been the result of an indulgence extended to him by the plaintiff."

Defendant maintains that this conclusion conflicts with that reached by the Supreme Court in the case of *Kern Sunset Oil Co* v. *Good Roads Oil Co., supra.* The provisions in the two oil leases make the cases easily distinguishable. In the Kern Sunset Oil Company case the lease required the lessee to drill and place on production two wells each year until sixteen wells had been completed. Five wells were never completed and the lessor without objection accepted royalties for several years after all of the wells should have been completed under the terms of the contract and then gave a notice of default and notice of cancellation of the lease. The lessor accepted royalties even after the notice of cancellation was served and for three months after his suit to declare the lease forfeited had been filed. Under these circumstances the Supreme Court could do nothing else than hold there had been a waiver. It expressed the opinion that the obligation to complete two wells each year rested on the

lessee and that each failure to perform was a completed breach; that the failure to drill the sixteen wells in eight years according to the contract was a completed breach; that the acceptance of royalties thereafter and especially after the notice of cancellation and the filing of the action was a waiver of the breaches.

We have no such situation here where there was no completion date specified for any well. The obligation to drill successive wells was continuing with no determinable starting or completion dates for wells number seven and eight nor completion date for well number six. Thus the contract was continuing and was successively breached so that the acceptance of royalties would only waive its prior but not its subsequent breaches.

The trial court gave plaintiff judgment for the value of the hydrocarbons removed by defendant from the property after the lease was cancelled. After that date defendant was in wrongful possession of the property and was liable for the gross value of the hydrocarbons it wrongfully produced and converted to its own use. (*Union Oil Co.* v. *Reconstruction Oil Co.*, 20 Cal. App. (2d) 170 [66 P. (2d) 1215]; *Union Oil Co.* v. *Mutual Oil Co.*, 19 Cal. App. (2d) 409 [65 P. (2d) 896].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied June 10, 1942, and appellant's petition for a hearing by the Supreme Court was denied July 10, 1942.