# United States Court of Appeals

## For the First Circuit

No. 04-1848

IN RE TYCO INTERNATIONAL LTD.
SECURITIES LITIGATION,

TYCO INTERNATIONAL LTD.; TYCO INTERNATIONAL (US) INC.,

Plaintiffs, Appellees,

v.

MARK H. SWARTZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

Michael J. Grudberg, with whom Stillman & Friedman, P.C. was
on brief for appellant.
Jeremy M. Goldman, with whom David W. Shapiro and Boies,
Schiller & Flexner LLP were on brief for appellees.

September 7, 2005

**CYR, <u>Senior Circuit Judge</u>.** Mark H. Swartz appeals from the district court order which dismissed his motion to stay the civil actions lodged against him by his former employer, Tyco International ("Tyco"), as well as his motion to compel arbitration of the Tyco claims. As we discern no error, the district court judgment must be affirmed.

## I

## BACKGROUND

Swartz served as the Chief Financial Officer of Tyco until September 10, 2002, when he and Tyco entered into the severance agreement ("Agreement") which is the subject of this litigation. The Agreement prescribes that all disputes arising from or concerning Swartz's employment at Tyco were to be subject to binding arbitration, but the Agreement specified neither the arbitrator nor the governing arbitral rules.

Swartz was indicted in New York state court on September 11, 2002 for abusing his position in order to further his own financial gain. On October 7, 2002, Tyco submitted a demand for arbitration against Swartz with the American Arbitration Association (AAA), seeking $400 million in damages for essentially the same abuses described in the pending criminal indictment. As the arbitration clause in the Agreement did not name AAA as the arbitrator, AAA sought written consent from both parties.

On November 6, 2002, after Swartz had negotiated

unsuccessfully with Tyco for a postponement of any arbitration until after his criminal trial, Swartz sent Tyco a letter which stated, in pertinent part:

> . . . Mr. Swartz does not consent to the AAA's administration of this matter and does not agree to participate in the arbitration filed with the AAA. . . .

> . . . Our position . . . is that we have significant concerns about participating in any arbitration given the pendency of the criminal case against Mr. Swartz and its potential implication of his Fifth Amendment rights. Nevertheless, we discussed the possibility of determining whether any agreement could be reached concerning various preliminary matters. We did not however, reach any agreement, including whether to use the AAA as a forum. . . .

> . . . I reiterated my concern that we would need to seek a stay of any arbitration at some time in the future, and that we did not know how the AAA would handle such an application [for a stay]. I suggested in our conversation that – prior to agreeing to the use of the AAA – we wanted to learn more about the manner in which such an application would be handled, and I suggested a preliminary conference with someone from the AAA to discuss the matter. . . .

> . . . [W]e would ask that you reconsider your position that you will not consent to a stay of any arbitration pending the resolution of Mr. Swartz's criminal case. . . . Furthermore, we would consider agreeing to a stay of the arbitration that included a provision for the ultimate use of the AAA (and the use of an arbitrator selection process similar to that outlined in your proposal) after the criminal matter is resolved. Please advise me if you are interested in discussing such a potential agreement.

-3-

During the ensuing five-month period, the parties engaged in no further correspondence, and the AAA dismissed the Tyco demand for arbitration on March 21, 2003, for lack of written consent.

On April 1, 2003, Tyco brought the instant civil action against Swartz in the Southern District of New York, demanding damages for the identical malfeasance described in its AAA arbitration demand. Swartz in turn submitted a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), citing the binding arbitration clause in the Agreement. After the Judicial Panel on Multidistrict Litigation transferred the case to the District of New Hampshire, the district court denied the Swartz motions to dismiss, and concluded that Swartz had "actively resisted arbitration, claiming that it should be delayed until the criminal charges now pending against him have been resolved."

Swartz neither appealed from the denial of these motions, nor submitted a timely answer to the Tyco complaint, as required under Fed. R. Civ. P. 12(a)(4)(A). After noting Swartz's default, the district court extended the filing deadline until March 15, 2004. Rather than submitting an answer, however, Swartz submitted a motion to compel arbitration which repeated the contentions previously rejected by the court in denying his Rule 12(b) motions. Swartz now appeals from the district court order denying the motion to compel. In re Tyco Int'l, Ltd., No. 02-1335, 2004 WL 1151541

-4-

(D.N.H. May 24, 2004) (unpublished opinion).[1]

## II

## DISCUSSION

Swartz asserts that the district court erred in determining that he waived the right to arbitrate the parties' disputes, given that (i) his November 6 letter was not a final refusal to arbitrate, but simply an interim step in the ongoing negotiations with Tyco regarding the choice of arbitrator and arbitral rules, neither of which had been specified in the Agreement; (ii) at most, the November 6 letter was ambiguous, and the strong federal policy favoring arbitration therefore requires that any ambiguity be resolved against waiver; and (iii) in any event, Tyco sustained no cognizable prejudice from the putative waiver by Swartz.

The parties acknowledge that all claims in the Tyco complaint are arbitrable pursuant to their Agreement. A determination that a party has waived its right to arbitrate is reviewed de novo, whereas the district court's findings of fact are subject to "clear error" review. See In re Citigroup, Inc., 376 F.3d 23, 26 (1st Cir. 2004). As federal policy strongly favors arbitration of disputes, a "[w]aiver is not to be lightly inferred," thus reasonable doubts as to whether a party has waived

---

[1]Swartz unsuccessfully moved to stay the district court proceedings pending this appeal.

the right to arbitrate should be resolved in favor of arbitration. Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 61 (1st Cir. 2003).  However, "an arbitration provision has to be invoked in a timely manner or the option is lost." Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003); see Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 15 (1st Cir. 2005) ("[U]ndue delay in bringing arbitration . . . is inconsistent with the desire to arbitrate.") (emphasis added).  Waivers of arbitral rights need not be express, but may be implied from the particular circumstances.  See Restoration Pres., 325 F.3d at 61 (noting that "[t]here are no per se rules," and that belated assertions of a right to arbitrate must be assessed in "context"); In re Crysen/Montenay Energy Co., 226 F.3d 160, 163 (2d Cir. 2002) (noting that there is no "bright line" rule as to waiver); Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995).[2]

---

[2]Accordingly, we have relied upon a nonexclusive list of circumstances in determining whether an implied waiver of arbitral rights has occurred:

> [1] whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, . . . [2] whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, . . . [3] whether there has been a long delay in seeking the stay or whether enforcement of arbitration was brought up when trial was near at hand. .

Once Tyco established that Swartz had waived the right to arbitrate, it also was required to demonstrate a "modicum of prejudice." Rankin, 336 F.3d at 12; see Citigroup, 376 F.3d at 26; Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001). In ascertaining prejudice, "we consider the larger context of the litigation." Citigroup, 376 F.3d at 26.

## A. **Waiver**

The district court reasonably concluded – based upon the totality of the circumstances – that Swartz had waived his arbitral rights unequivocally. First, the opening paragraph of the November 6, 2002 letter explicitly stated that Swartz "does not consent to the AAA's administration of this matter and does not agree to participate in the arbitration filed with the AAA." Swartz also failed to propose an arbitrator who might meet with his approval. Cf. Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 485 (5th Cir. 2002) (finding no waiver where each litigant had proposed a different arbitrator, and thus remained in good faith

---

. . Other relevant factors are [4] whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, . . . [5] whether important intervening steps (e.g. taking advantage of judicial discovery procedures not available in arbitration . . .) had taken place, . . . and [6] whether the other party was affected, misled, or prejudiced by the delay.

Citigroup, 376 F.3d at 26 (citations omitted).

negotiations on that issue).

Bypassing the issue as to whether the Swartz letter could have rejected the AAA as an arbitrator without identifying the precise reasons for doing so, Swartz did identify his "concerns" regarding the pending AAA proceedings: (i) Swartz preferred to stay arbitration until his criminal trial was concluded; (ii) he did not know how the AAA would rule on his motion for stay; and (iii) he intended to seek preliminary input and assurances from the AAA as to whether it would be disposed to grant his stay motion. The affidavit of Swartz's counsel, describing the negotiations preceding the Swartz letter, confirm this same overarching concern.

Swartz insists that, by this language, he intended simply to sound out Tyco regarding his counterproposal, and did not intend that the agreement to arbitrate be conditioned upon a stay. The Swartz contention is undercut, however, by the following statement in his letter: "[W]e would consider agreeing to a stay of the arbitration that included a provision for the ultimate use of the AAA (and the use of an arbitrator-selection process similar to that outlined in your proposal) after the criminal matter is resolved." The letter further states: "[W]e have significant concerns about participating in any arbitration given the pendency of the criminal case." (Emphasis added.) The district court reasonably concluded from these statements that the only real objection Swartz had to the AAA arbitration was that it might not come with a guarantee

that the arbitration would be postponed until after his criminal trial.

Nothing in the arbitration clause of the Agreement, nor in the case law, accorded Swartz a unilateral contractual right to any such indeterminate postponement of arbitration.[3] His concerns relating to the possible effects of the arbitration on the exercise of his Fifth Amendment rights may or may not be legitimate or well founded,[4] but the appropriate options for Swartz were either to accept the AAA as arbitrator and file a motion to stay the proceedings, identify some other bona fide reason for declining to accept the AAA as the arbitrator, and/or propose another arbitrator. His letter makes it reasonably clear that he would have accepted the AAA provided he was assured that it would grant him a stay.

Moreover, even assuming that the November 6 letter left some reasonable doubt as to Swartz's intent, his ensuing conduct removed it. For more than five months, Swartz did nothing. He

---

[3]Any such stay of arbitration would have entailed considerable delay in the instant case. The Swartz criminal trial commenced in September 2003, and he testified in his own defense in February 2004. Subsequently, however, a mistrial was declared, and the retrial was scheduled to commence in January 2005.

[4]On appeal, Swartz has not attempted to demonstrate the merits of the grounds for seeking a stay, and there exists no controlling precedent favoring his position. Cf. Vellone v. First Union Brokerage Servs., Inc., 163 F. Supp. 2d 551, 553 (D. Md. 2001) (denying a stay of arbitration pending criminal proceedings). Hence, we need not address that issue.

contends that his November 6 letter placed the ball in Tyco's court, but the letter itself contained a sentence which prescribed the precise conditions for a Tyco reply: "Please advise me if you are interested in discussing such a potential agreement," viz., an agreement whereby the AAA would be the arbitrator in a proceeding stayed for an indeterminate time period awaiting resolution of his criminal case. Tyco's failure to respond to the Swartz counter-offer within a reasonable time connoted Tyco's rejection of a term to which its objection had already been made abundantly clear, thus placing some onus upon Swartz to go forward. Instead, Swartz waited until the AAA dismissed the Tyco demand for arbitration, more than six months after its filing. Further, Swartz does not contend that he undertook any of the preliminary steps, described in the November 6 letter, to consult with the AAA regarding the requirements or prospects for a stay.

Finally, the dilatory tactics engaged in by Swartz continued even after Tyco filed its district court complaint in March 2003. After the district court rejected his Rule 12(b) motions to dismiss pursuant to the Agreement's arbitration clause, Swartz inexplicably elected not to take an interlocutory appeal of right from that denial. See 9 U.S.C. § 16(a)(1); Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 5-6 (1st Cir. 2004); see also Cotton v. Slone, 4 F.3d 176, 179 (2d Cir. 1993). Furthermore, following that denial, Swartz failed to submit a

timely answer to the Tyco complaint. <u>See</u> Fed. R. Civ. P. 12(a)(4)(A). When the court extended the date for filing the answer, Swartz waited until the new deadline had expired, then instead of filing an answer, he submitted a motion to compel arbitration which was substantially identical to the Rule 12(b) motions which had already been denied by the district court. Thus, the district court reasonably concluded that Swartz had sought to accomplish by indirect means what he had failed to manage by negotiating with Tyco: an indeterminate delay in arbitration proceedings pending his criminal trial.

## B.  <u>Prejudice</u>

Next, Swartz suggests that even assuming he waived the right to arbitrate, Tyco suffered no cognizable prejudice. Quite to the contrary, the record strongly suggests a deliberate strategy unilaterally designed to delay the arbitration proceedings, without either Tyco's consent or any ruling, either by an arbitrator or a court, on the merits of a motion to stay. Even as justice delayed may amount to justice denied, so it is with arbitration. <u>See</u> <u>Rankin</u>, 336 F.3d at 12. In these circumstances, we require simply that Tyco demonstrate a "modicum of prejudice," <u>id.</u>, and it cannot be disputed that Tyco is "out its expenses," in submitting the doomed AAA demand for arbitration, in filing its district court complaint, and in defending against not one, but two, motions for compelled arbitration. <u>See</u>, <u>e.g.</u>, <u>Menorah Ins. Co.</u> v. <u>INX Reins.</u>

-11-

<u>Corp.</u>, 72 F.3d 218, 222-23 (1st Cir. 1995) (noting that proximate relationship between party's intentionally dilatory tactics and opposing party's litigation expenses constitutes sufficient "prejudice" to enforce waiver).

Once again, we emphasize that there is no bright-line rule for a waiver of arbitral rights, and each case is to be judged on its particular facts. <u>See</u> <u>Rankin</u>, 336 F.3d at 12. In these circumstances, however, Swartz should not be allowed to reject the Tyco demand for arbitration, stand idle, then submit a motion to compel arbitration after Tyco has been required to commence a court proceeding following the AAA's dismissal of its demand for arbitration. <u>See</u> <u>Lane</u> v. <u>Larus & Brother Co.</u>, 243 F.2d 364, 367 (2d Cir. 1957) ("A party cannot raise <u>unjustifiable</u> objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced.") (emphasis added); <u>see</u> <u>supra</u> note 4.[5] Judicial

---

[5]Although mere delay normally will not be sufficient to establish prejudice, <u>see</u> <u>Restoration Pres.</u>, 325 F.3d at 61, a party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party. <u>See</u> <u>Page</u> v. <u>Moseley, Hallgarten, Estabrook & Weeden, Inc.</u>, 806 F.2d 291, 294 n.3 (1st Cir. 1986) (noting lack of evidence that party invoking arbitration clause had engaged in "<u>purposeful</u> delay tactic[s]") (emphasis added); <u>see</u> <u>also</u> <u>Cabinetree</u>, 50 F.3d at 391 ("There is no plausible interpretation of the reason for the delay."); <u>Greene</u> v. <u>Am. Cast Iron Pipe Co.</u>, 871 F. Supp. 1427, 1431 (N.D. Ala. 1994) (finding no

condonation of such deliberate gamesmanship directly conflicts with the oft-cited principle that arbitration is "not meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution process." Menorah Ins., 72 F.3d at 222.

**Affirmed**.

---

waiver where "there [was not] any indication in this record that ACIPCO intentionally delayed the filing of its motion [to compel arbitration] in order to gain tactical advantage") (emphasis added); Hurlbut v. Gantshar, 674 F. Supp. 385, 389 (D. Mass. 1987)(noting that there was no record evidence that party invoking arbitration clause had engaged in "inexcusable and calculated dilatory conduct") (emphasis added).