**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THOMAS R. COX,
                *Plaintiff-Appellee,*

v.

OCEAN VIEW HOTEL CORPORATION,
doing business as Radisson; JOHN
DOES 1 TO 50; JANE DOES 1 TO 50;
DOE PARTNERSHIPS 1-50; DOE
CORPORATIONS 1-50; DOE ENTITIES
1-50,
                *Defendants-Appellants.*

No. 06-15903

D.C. No.
CV- 05-0765-
JMS/BMK

OPINION

Appeal from the United States District Court
for the District of Hawai'i
J. Michael Seabright, District Judge, Presiding

Argued and Submitted
November 2, 2007—Honolulu, Hawaii

Filed July 23, 2008

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tashima;
Partial Concurrence and Partial Dissent by
Judge O'Scannlain

## COUNSEL

Richard M. Rand, Torkildson, Katz, Fonseca, Moore & Hetherington, Honolulu, Hawaii, for the defendants-appellants.

Stephen T. Hioki, Honolulu, Hawaii, for the plaintiff-appellee.

## OPINION

TASHIMA, Circuit Judge:

Ocean View Hotel Corporation ("Ocean View") and Thomas Cox executed an employment agreement containing a mandatory arbitration clause. When a dispute arose during the course of employment, Cox wrote a letter to Ocean View requesting arbitration, but Ocean View responded by telling Cox that it did not consider his claim ripe for arbitration. Following termination of his employment, Cox filed a complaint in the Circuit Court of Hawai'i. At that point, Ocean View decided that it wanted to arbitrate Cox's claim. After removing the action to federal court, Ocean View moved to compel arbitration. The district court denied its motion to compel arbitration and granted Cox's motion for partial summary judgment on the ground that Ocean View previously breached its agreement and waived its right to arbitrate disputes with Cox. *Cox v. Ocean View Hotel Corp.*, 433 F. Supp. 2d 1171 (D. Haw. 2006) ("*Cox I*"). We have jurisdiction over the district court's denial of a motion to compel arbitration under 9 U.S.C. § 16(a)(1)(B). *See Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005).

We hold that the district court erred in granting partial summary judgment in favor of Cox based on his breach-of-agreement theory, because Cox did not properly initiate arbitration under the terms of his employment agreement. We also hold that the district court improperly granted summary judgment in Cox's favor on the issue of waiver.

## BACKGROUND

On July 17, 2001, Cox and Ocean View signed a Letter of Agreement of Cox's employment as the Director of Finance

for the Radisson Hotel Waikiki Prince Kuhio. In addition to
setting forth Cox's job description and compensation, the let-
ter included the following arbitration clause:

> Any disputes between Employer and Employee aris-
> ing out of the employment relationship shall be set-
> tled by arbitration in accordance with the then
> current Model Employment Arbitration Procedures
> of the American Arbitration Association (AAA) in
> lieu of jury trial and all other judicial dispute resolu-
> tion methods. Employee fully understands and
> accepts this. . . . Any controversy except for Work-
> men's Compensation, involving the construction or
> application of the terms, provisions, or conditions of
> this Agreement or otherwise arising out of or related
> to this Agreement shall likewise be settled by arbi-
> tration. This agreement to arbitrate covers all
> employment disputes including but not limited to
> those involving tort, wrongful discharge, and dis-
> crimination claims. The cost of the arbitration shall
> be paid by the Company. The location of the arbitra-
> tion shall be paid by the Company. The location of
> the arbitration shall be in the County in which the
> Company is located. This clause cannot be amended
> without written consent of both parties.

The letter also provided that "[t]he validity, interpretation,
enforceability, and the performance of this Agreement shall
be governed by and construed in accordance with the law of
the State of California."

   The employment relationship began to sour by October
2003, when Cox's supervisor Gary Jutz raised allegations that
Cox was involved in a sexual relationship with one of his
female subordinates. The events that gave rise to the current
litigation began the following year, on October 5, 2004, when
Jutz sent a memorandum to Cox demanding that Cox end his
personal relationship with that subordinate. Although the let-

ter did not describe the relationship as a romantic or sexual one, it stated that the perception of the alleged relationship was disrupting the performance of the department. Jutz ended the letter by warning Cox that "[f]ailure to change [his] behavior and maintain expected work responsibilities is a serious disciplinary matter" and that "[a] continued failure to work within the organization to resolve this situation" could "ultimately be deemed an act of insubordination and grounds for immediate termination of employment."

On October 11, 2004, Cox responded in a letter to Jutz's supervisor, Clyde Guinn, in which he laid out various arguments in support of his claim that he was a victim of sex discrimination. In the first line, Cox called the letter a "request to enter into arbitration." He also stated that assertions in Jutz's memo violated provisions in his employment handbook, by amounting to "sex discrimination, harassment, intimidation, interference with others in the performance of their jobs, threatening, making maliciously false and/or defamatory statements concerning an associate, and retaliation . . . ." Cox's letter concluded by requesting that Guinn "provide the date and time of the arbitration hearing and any questions" to his attorney at a listed address.

Guinn responded on October 27, 2004, in a letter to Cox ("Guinn's letter"). In it, Guinn disagreed with Cox's characterization of Jutz's memo as accusing Cox of having a romantic or sexual relationship with that subordinate. He also disagreed with Cox's statements that Jutz was guilty of the violations asserted in Cox's letter. The essential portions of Guinn's letter are contained in the following two paragraphs:

> In summary, therefore, I do not consider this a case for arbitration. Gary Jutz believes that your behavior, as a senior member of the hotel management team, is cause for censure. You do not accept this is the case. Clearly, if you continue to pursue the activities which Gary Jutz has complained of, you run the risk

of being terminated. At that point, assuming you then consider it a wrongful termination, arbitration may be in order.

In the meantime, if you feel that Gary Jutz is "guilty of" the issues set out above, it may be that we should have an independent investigation by an outside attorney to establish whether or not there is in the Hotel a perception of a "relationship" existing between you and your direct subordinate . . . , thereby justifying the complaints made by Mr. Jutz to you on numerous occasions. . . . At the conclusion of any such investigation I believe the position will be much clearer for all parties and we could then each decide on what course of action each wishes to adopt in the circumstances.

Jutz terminated Cox's employment on December 20, 2004. On February 10, 2005, Cox filed a Charge of Discrimination with the Hawai'i Civil Rights Commission, and on September 26, 2005, the Commission granted him the right to sue. Cox then filed a complaint in state court, which Ocean View removed to federal district court. In its answer, Ocean View requested "that the Complaint herein be stayed and that Plaintiff be required to submit all of his claims to final and binding arbitration . . . ." Cox moved for partial summary judgment denying arbitration on the theory that Ocean View breached its agreement to engage in arbitration by refusing arbitration in Guinn's letter.

The district court ruled in favor of Cox, granting his motion for partial summary judgment and denying Ocean View's motion to compel arbitration. *Cox I*, 433 F. Supp. 2d at 1181. The district court concluded that Cox properly initiated arbitration, *id.* at 1176; Ocean View refused to arbitrate, *id.* at 1177; and, as a result, Ocean View both breached its agreement to arbitrate, *id.* at 1178, and waived its right to enforce the agreement. *Id.* at 1180. This appeal followed.

## STANDARD OF REVIEW

We review the denial of a motion to compel arbitration de novo. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1009 (9th Cir. 2005). Because denial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration, Cox's motion for partial summary judgment was the functional equivalent of an opposition to Ocean View's motion, and we will treat it as such. *Cf. Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1084 n.4 (9th Cir. 1999) (treating a motion for summary judgment as a *de facto* motion to compel arbitration), *abrogated on other grounds by Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).[1]

## ANALYSIS

## I

**[1]** Preliminarily, we must decide whether Cox's challenges to enforcing the arbitration clause are for the court, or for the arbitrator, to decide. We have previously determined that the federal law of arbitrability under the Federal Arbitration Act ("FAA") governs the allocation of authority between courts and arbitrators. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). Because the FAA mandates that "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]" the FAA limits courts' involvement to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* at 1130 (citation and quotation marks omitted).

---

[1]We assume without deciding that the "dispute" Cox wanted arbitrated is an arbitrable dispute within the meaning of the parties' arbitration agreement. Also, on this appeal, we resolve only the legal questions presented and not any factual disputes, which the parties are free to contest on remand. *See Brown*, 430 F.3d at 1006 ("To the degree that our conclusion that Dillard's breached its arbitration agreement with Brown depends on disputed facts, Dillard's is free on remand to contest those facts.").

Cox challenges the arbitration agreement only on the first ground. Therefore, we decide whether Cox's contract-based challenges to enforcement — breach of the agreement and waiver — are properly before the court.

[2] Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate. 9 U.S.C. § 2; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006). Under that provision, arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has recently clarified that contract-based challenges to the validity of arbitration agreements come in two types: "[o]ne type challenges specifically the validity of the *agreement to arbitrate* . . . . [and] [t]he other challenges the *contract as a whole*, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing*, 546 U.S. at 444 (emphasis added). Challenges to the contract's validity are considered by the arbitrator in the first instance. *Id.* at 445-46. Where, however, "the crux of the complaint is . . . the arbitration provision itself, then the federal courts . . . must decide whether the arbitration provision is invalid and unenforceable . . . ." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006) (en banc)). In sum, our case law makes clear that courts properly exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause itself. *See, e.g., Nagrampa*, 469 F.3d at 1263-64 (holding that courts should address a procedural unconscionability defense to the enforcement of an arbitration provision); *Brown*, 430 F.3d at 1010, 1012 (considering plaintiff's breach of contract and waiver defenses to enforcement of an otherwise valid arbitration agreement).[2]

---

[2]Other courts have considered waiver as a defense to a motion to compel arbitration. *See, e.g., Khan v. Parsons Global Servs.*, 521 F.3d 421,

**[3]** In this case, neither party disputes the validity of the Letter of Agreement. Instead, Cox challenges enforcement of the arbitration clause on the grounds that Ocean View breached the agreement to arbitrate and therefore had no right to enforce the clause or, alternatively, that Ocean View's conduct amounted to a waiver of the right to arbitrate. Therefore, under *Buckeye Check Cashing*, the particular contractual defenses to enforcement of the arbitration clause at issue in this case, breach and waiver, were properly heard by the district court.[3]

Ocean View contends that the issue of waiver was for the arbitrator to determine. The cases on which it relies, however, *Omar v. Ralphs Grocery Company*, 13 Cal. Rptr. 3d 562 (Ct. App. 2004), and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), do not discuss whether courts or arbitrators should consider challenges to the *validity* of arbitration agreements, but instead, focus on the separate inquiry of whether courts or arbitrators should determine the *scope* of the arbitration clause. *See Omar*, 13 Cal. Rptr. 3d at 566; *Howsam*, 537 U.S. at 83 (addressing "[t]he question whether the parties have submitted a particular dispute to arbitration").[4]

---

424-25 (D.C. Cir. 2008); *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005); *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir. 1997); *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 232 (3d Cir. 1997).

[3]The partial dissent is based on the premise that the arbitration agreement is valid. Dissent at 9085. As discussed below, however, we can only reach that conclusion after considering, and rejecting, the defenses raised by Cox. The Supreme Court has noted that because the duty to arbitrate originates in a contractual agreement between the parties, a party "cannot be compelled to arbitrate if an arbitration clause does not bind it at all." *John Wiley & Sons v. Livingston*, 376 U.S. 543, 547 (1964). It is the binding nature of the arbitration clause that Cox contests, and that we must review.

[4]Indeed, the California Court of Appeal noted that the issue "whether there is an enforceable arbitration agreement between the parties" was antecedent to the issue whether particular procedural matters, such as waiver, are covered by the agreement. *Omar*, 13 Cal. Rptr. 3d at 566.

In *Howsam*, the Court confronted the issue whether a court or a National Association of Securities Dealers ("NASD") arbitrator should apply a NASD procedural rule to a dispute between the parties. *Id.* at 81. The NASD provision at issue included a six-year statute of limitations which the plaintiff, Dean Witter Reynolds, Inc., attempted to enforce in court against a disgruntled client. *Id.* at 82. The precise question presented to the Court was whether the parties agreed to submit enforcement of this procedural rule to an arbitrator, rather than the courts. *Id.* at 83. In answering, the Court distinguished between two gateway disputes. The first was "whether the parties are bound by a given arbitration clause[,]" a question for a court to decide, *id.* at 84, and one not at issue in the case. The second was "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy . . . ." *Id.* In addressing the second gateway issue, the Court reasoned that " 'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide[,]" because "parties would likely expect that an arbitrator would decide [that] gateway matter." *Id.* (citation and quotation marks omitted). Because the parties would likely have committed interpretation of a NASD rule to a NASD arbitrator, that particular issue of procedure was left for the arbitrator to decide. *Id.* at 86.

The reasoning of *Howsam* is simply inapplicable to resolution of the first gateway issue: whether the parties are *bound* by the arbitration clause.[5] As discussed above, Cox does not

---

[5]Indeed, *Howsam* does not even cite *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1966), or its progeny, which discuss the allocation of authority between the court and arbitrators over challenges to the validity of arbitration clauses. Similarly, *Buckeye Check Cashing* does not cite to *Howsam* and its predecessors discussing the scope of arbitrable issues. The Court has hitherto kept those two inquiries separate. Further, to treat breach and waiver as procedural issues for the arbitrator, as the partial dissent suggests, *see* Dissent at 9085, would create a strange

concede that he is bound by the arbitration clause; instead, he contends that Ocean View revoked the clause through its own breach or waiver of the agreement to arbitrate. Cox does not contend that waiver is not arbitrable, but raises it as a defense to a motion to compel arbitration brought against him in federal court. Far from disputing the arbitrability of his claim, he initially *sought* arbitration. Therefore, the district court properly decided the issues presented in this case.

## II

**[4]** Section 2 of the FAA provides that arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a party may challenge the validity or applicability of the arbitration provision by raising the same defenses "available to a party seeking to avoid the enforcement of any contract." *Brown*, 430 F.3d at 1010. These contract-based challenges are governed by applicable state law. *See Davis*, 485 F.3d at 1072. Here, as we have previously noted, the parties selected California law to govern the resolution of disputes arising out of the employment agreement.

## A

**[5]** Breach or repudiation of a contract by one party excuses nonperformance by the other. "A bedrock principle of California contract law is that he who seeks to enforce a contract

---

result: the arbitrator would get first crack at defenses to a motion to compel arbitration based on waiver or breach. In essence, the court would have to compel arbitration without reviewing the parties' contentions. If the arbitrator resolves the issue in favor of the party asserting a waiver defense, however, the parties would likewise have no recourse in the arbitral forum. Therefore, Judge O'Scannlain's suggestion virtually eliminates waiver as a defense to a motion to compel arbitration, a defense widely recognized by other courts. *See supra* note 2.

must show that he has complied with the conditions and agreements of the contract on his part to be performed." *Brown*, 430 F.3d at 1010 (citation and quotation marks omitted). *See also Local 659, I.A.T.S.E. v. Color Corp. of Am.*, 302 P.2d 294, 299 (Cal. 1956) (In Bank) ("A repudiation of a contract accepted by the promisor excuses performance by the promisee."). Before reaching the question whether Ocean View's actions constituted a repudiation of the agreement, Cox must first establish that he properly initiated arbitration. If he failed to do so, then Ocean View could not have repudiated the agreement, regardless of the contents of Guinn's letter.

**[6]** Cox argues that his October 11, 2004, letter to Guinn constituted a proper demand for arbitration. We disagree. The arbitration clause in the employment agreement clearly states that "disputes . . . shall be settled . . . in accordance with the then current Model Employment Arbitration Procedures of the [AAA] . . . ." Our court, as well as the California Court of Appeal, has concluded that such language incorporates the applicable rules of the AAA into the terms of the contract. *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *O'Hare v. Mun. Res. Consultants*, 132 Cal. Rptr. 2d 116, 126 (Ct. App. 2003). *Accord Howsam*, 537 U.S. at 86 (finding incorporation of a NASD arbitration procedure in similar circumstances). The AAA employment rules and procedures are available on the AAA website. *See* American Arbitration Association, Employment Arbitration Rules, http://www.adr.org/sp.asp?id=32904 (last visited Dec. 3, 2007). Rule 4, "Initiation of Arbitration," requires that the initiating party: (1) "file a written notice (hereinafter 'Demand') of its intention to arbitrate" in duplicate; (2) provide a copy of the Demand to the other party; and (3) include the applicable filing fee. Cox, who was then represented by counsel, does not dispute that he failed to comply with any of these basic requirements.

**[7]** Instead, Cox justifies his failure to follow AAA procedures by arguing that the employment agreement did not

specify how arbitration was to be initiated, just that it would take place "in accordance" with AAA rules. This position is untenable because, as discussed above, the agreement clearly integrated those rules and procedures. Besides challenging the clarity of the provision, Cox does not assert any traditional contract defenses. Recently, the California Court of Appeal noted that it was aware of no cases "that stand for the extreme proposition that a party who fails to read a contract but nonetheless objectively manifests his assent by signing it — absent fraud or knowledge by the other contracting party of the alleged mistake — may later rescind the agreement on the basis that he did not agree to its terms." *Stewart v. Preston Pipeline Inc.*, 36 Cal. Rptr. 3d 901, 921 (Ct. App. 2005) (citing *Brookwood v. Bank of Am.*, 53 Cal. Rptr. 2d 515, 520 (Ct. App. 1996) (commenting that "plaintiff was bound by the provisions of [an] arbitration agreement regardless of whether she read it or was aware of the arbitration clause when she signed the document") (citation and quotation marks omitted)). Cox's contention amounts to the same "extreme proposition" noted in *Stewart*. Although the arbitration clause did not explicitly articulate the requirement of formally initiating arbitration proceedings with the AAA, we are satisfied that Cox consented to the terms of the agreement he signed. The fact that Cox was hired for a managerial position and was represented by counsel at the time he made his flawed request for arbitration reinforces this view.

Cox also contends that Ocean View's refusal to arbitrate placed him in the situation of having to pay his own filing fee, because AAA rules require a party to pay a fee in order to initiate arbitration. Therefore, he argues, compliance with AAA procedures would violate the terms of the employment agreement because Ocean View agreed to pay "[t]he cost of arbitration . . . ." The language of the AAA rules bears directly on this argument. The item described "Filing Fees" is listed under a general heading called "Costs of Arbitration." The positioning of the items suggests that filing fees are one of various costs, including hearing fees, postponement fees,

room rental, abeyance fees, and expenses. Though this seems to lend support to Cox's contention, each of the aforementioned costs specifies which party is expected to pay them, and all save for the filing fee are to be charged to the employer. Thus, the text of the Rule itself avoids the problem of ambiguity identified by Cox.[6]

**[8]** The district court also determined that Ocean View should be equitably estopped from denying that Cox initiated arbitration because of its own refusal to arbitrate. The facts established by the pleadings do not support this view. The doctrine of equitable estoppel "provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." *Aerojet-Gen. Corp. v. Commercial Union Ins. Co.*, 65 Cal. Rptr. 3d 803, 814 (Ct. App. 2007) (citation and quotation marks omitted). In order to apply the doctrine, "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Id.* (citation and quotation marks omitted). *See also United States v. Georgia-Pac. Co.*, 421 F.2d 92, 96 (9th Cir. 1970) (articulating a substantially similar list of elements). To satisfy the second element, the district court reasoned that "the Defendant's letter came from the Senior Vice President of Operations, and the Plaintiff is certainly entitled to believe the Defendant's statement that the Defendant did not consider this a case for arbitration[.]" *Cox I*, 433 F. Supp. 2d at 1177. There is no indication in the record that Ocean View *intended* that Cox rely upon its letter to his detriment. Nor did Cox assert that he believed Ocean View intended him to rely, or did in fact rely, on Guinn's letter. *Cf. O'Donnell v. Vencor Inc.*, 465 F.3d

---

[6]Moreover, Cox presumably could seek reimbursement of any filing fees he advanced as part of the arbitration award.

1063, 1067 (9th Cir. 2006) (affirming denial of equitable estoppel on the grounds that there was no "evidence of improper purpose on the part of the defendant") (citation and quotation marks omitted). Therefore, the district court erred in concluding that Ocean View was estopped from denying Cox's initiation of arbitration. Because Cox did not abide by the terms of the arbitration clause, we hold that Ocean View did not breach its agreement to arbitrate.

For the foregoing reasons, Cox's reliance on *Brown* is misplaced. In *Brown*, an employer, Dillard's, terminated Brown for allegedly adding ten minutes to her timecard. Thereafter, she filed a notice of intent to arbitrate with the AAA as required by Dillard's arbitration policy. *Id.* at 1008. Under the arbitration policy, Brown's share of the arbitration fee was $100. *Id.* She paid the fee. *Id.* After filing, the AAA informed Brown that Dillard's had not responded to its requests for information. *Id.* Brown was able to speak with a person in Dillard's legal department once to notify the employer of this delinquency, but did not receive a response to subsequent communications. *Id.* Furthermore, the AAA sent two letters to Dillard's notifying it that Brown had already paid her portion of the fee and that Dillard's owed the remaining $400 of the filing fee. *Id.* After Dillard's failed to respond to the AAA, the AAA notified Brown that Dillard's had not paid its share of the filing fee, and returned her notice of arbitration. *Id.* at 1009. Brown made attempts to contact Dillard's for two months to discuss its refusal to arbitrate, and only succeeded in making contact once, at which time the legal department told her that "her complaint had no merit and that Dillard's refused to arbitrate." *Id.* After Brown filed suit, Dillard's removed the case to federal district court and moved to compel arbitration. *Id.*

This court concluded, based on the facts summarized above, that Dillard's "breached its agreement with Brown by refusing to participate in the arbitration proceedings Brown initiated." *Id.* at 1010. We rejected the notion that the

employer could make an independent determination of the suitability of the employee's claims for arbitration, stating that Dillard's "proper course of action was to make that argument *in arbitration*." *Id.* (emphasis added). Thus, we construed Dillard's refusal as a breach of the agreement which excused Brown from having to arbitrate the matter instead of pursuing her lawsuit. *Id.* at 1011.

**[9]** The plaintiff in *Brown* made heroic efforts to initiate arbitration, clearly going beyond the requirements of the arbitration agreement. Here, in contrast, Cox did not comply with the terms of the agreement; he simply failed properly to initiate arbitration. As the non-complying party in this case, Cox cannot establish that Ocean View repudiated the arbitration agreement. *Brown* simply does not apply under the facts of this case.

**B**

Cox argues in the alternative that Guinn's letter amounted to a waiver of Ocean View's right to arbitrate Cox's dispute. Recently, the California Supreme Court set forth the factors to be considered under California law to determine whether arbitration has been waived:

> In determining waiver, a court can consider (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not avail-

able in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 82 P.3d 727, 733 (Cal. 2003) (citations and internal quotation marks omitted).[7]

We note preliminarily that, while Cox's failure properly to initiate arbitration under the AAA rules may make it more difficult for him to establish waiver, it does not foreclose his assertion, as it does in the breach of agreement context discussed above, of waiver by Ocean View. That is because waiver focuses on the actions of the party charged with waiver. To be sure, Cox's conduct may bear upon the factors discussed above, but a fact finder might reasonably determine that Ocean View waived its right independently of whether Cox perfected his request for arbitration.

**[10]** Thus, the district court properly considered whether Ocean View waived its right to compel arbitration, notwithstanding Cox's failure to file a claim with the AAA, because arbitration is a matter of private contract law. *See Howsam*, 537 U.S. at 83; *see also Cronus Inv., Inc. v. Concierge Servs.*, 107 P.3d 217, 222 (Cal. 2005) (noting that the FAA does not provide special status for arbitration agreements, but simply makes them only as enforceable as other contracts, and that the FAA does not require any specific set of procedural rules) (citations and quotation marks omitted). This stands in marked contrast, for example, to the Federal Rules of Civil Procedure, which govern the manner in which parties bring suits regardless of whether parties would have chosen those particular rules. As discussed above, a party may fail to com-

---

[7]In concluding that Ocean View had "waived its right to enforce the arbitration agreement," the district court relied on the three-factor test articulated in *Brown*. *Cox I*, 433 F. Supp. 2d at 1180. After tracing its lineage, however, we conclude that the *Brown* three-factor test, 430 F.3d at 1012, is not based on California law.

ply with the terms of the agreement, resulting in a breach of contract. In such a situation, though, waiver has long been recognized as a valid defense to nonperformance by the breaching party. *See, e.g.*, *Westfed Holdings, Inc. v. United States*, 407 F.3d 1352, 1361 (Fed. Cir. 2005) ("Implied waiver may be inferred by conduct or actions that mislead the breaching party into reasonably believing that the rights to a claim arising from the breach was [sic] waived."); *Extension Oil Co. v. Richfield Oil Corp.*, 125 P.2d 895, 896 (Cal. Ct. App. 1942) (discussing the established rule that acceptance of the benefit of a contract following breach by the other party constitutes a waiver of the breach).

**[11]** Moreover, waiver is an equitable doctrine. *See generally Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1194 (9th Cir. 2000). As such, courts can apply it to redress injustice in situations where technical requirements prevent the court from otherwise providing adequate legal remedies. *See Toscano v. Greene Music*, 21 Cal. Rptr. 3d 732, 738 (Ct. App. 2004) (noting that "[t]he object of equity is to do right and justice[,]" and that "[t]he powers of a court of equity . . . are not cribbed or confined by the rigid rules of law") (citations and internal quotation marks omitted). And "an action to compel arbitration is in essence a suit in equity to compel specific performance of [the arbitration agreement]." *Wagner Constr. Co. v. Pac. Mech. Corp.*, 157 P.3d 1029, 1034 (Cal. 2007). Thus, it is possible that Ocean View could have waived its right to arbitrate notwithstanding Cox's failure to file a claim with the AAA, and the district court properly engaged in that inquiry. We note, however, that "[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (citing *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

**[12]** We conclude that the district court erred in determining that Ocean View waived its right to arbitrate its dispute with Cox. None of the *St. Agnes* factors supports waiver. Even under the first factor, given Guinn's understanding that the dispute was not yet ripe for arbitration, it is at least a debatable proposition "whether [Guinn's] actions [were] inconsistent with the right to arbitrate." *St. Agnes*, 82 P.3d at 733. Second, all of factors (2) through (5), which have to do with the invocation of "the litigation machinery" and its use, militate in favor of Ocean View because Ocean View did not resort to litigation itself and acted to invoke arbitration immediately upon learning that Cox had instituted litigation. Finally, factor (6) strongly favors Ocean View. The district court found prejudice in the "delay and costs" alleged by Cox. *Cox I*, 433 F. Supp. 2d at 1180. It is not self-evident, however, that those costs and delay should be attributed to Ocean View rather than to Cox himself for not properly filing his claim with the AAA. In any event, the delay was minimal — approximately 30 days from Cox's filing his lawsuit in state court to Ocean View's motion to compel arbitration upon removal of the action to federal court. As to costs, the California Supreme Court has noted that "costs and expenses . . . incurred in responding to such [litigation] efforts likewise do not support a finding of waiver or prejudice." *St. Agnes*, 82 P.3d at 739. Thus, Cox's argument that he was prejudiced by the delay finds no support in the record or under California law.[8]

**[13]** Because none of the *St. Agnes* factors supports Cox's waiver argument and given the strong federal policy favoring the enforcement of arbitration agreements, we hold that the district court erred in concluding that Ocean View had waived its right to enforce the arbitration agreement.

---

[8]Cox also contends that he was prejudiced because he "would have prevailed [in arbitration] and [Ocean View] would not have a basis for terminating [his] employment." Any argument premised on the ultimate outcome of the arbitration, however, is speculative and, as such, cannot support a prejudice argument.

## CONCLUSION

We reverse the district court's grant of partial summary judgment in favor of Cox, and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED**.

---

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

While I concur in the court's decision that the motion to compel arbitration was erroneously denied by the district court, I respectfully disagree with its conclusion that the waiver issue was for the court to decide. In my view, arbitrability is a matter for the court; whether or not the agreement to arbitrate was properly invoked, by either side, at any time, is a matter for the arbitrator to decide. Thus I would reverse on the very narrow ground that a motion to compel must be granted because the arbitration clause is valid. I would leave all other issues to the arbitrator.

I

As the en banc opinion in *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc) has revealed, there are continued tensions in our arbitration jurisprudence which have failed to clarify this area. Very recently, the Supreme Court has renewed its commitment to support arbitration in *Hall Street Associates, L.L.C. v. Mattel*, 128 S. Ct. 1396, 1402 (2008). But *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 400 (1967) (holding that a federal court must "order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored"), *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (holding that "in the absence of an agreement to the

contrary, issues of *substantive arbitrability . . .* are *for a court to decide* and issues of *procedural arbitrability*, *i.e.*, whether *prerequisites* such as *time limits*, notice, laches, estoppel, and *other conditions precedent to an obligation to arbitrate have been met*, are *for the arbitrators to decide*" (quoting the Revised Uniform Arbitration Act of 2000 (RUAA) §6(c) cmt. 2) (emphasis added and in the original)), *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("[A] challenge to the *validity* of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." (emphasis added)), and *Nagrampa*, 469 F.3d at 1293-94 (holding that an arbitration agreement that was invalid due to unconscionability was not enforceable), are absolutely clear that once the legal decision is made by the court that an arbitration clause is valid, all remaining issues are for the arbitrator.

The Supreme Court in *Howsam* could not be clearer: "the presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability." 537 U.S. at 84 (internal quotation marks and citation omitted). Thus, I find perplexing the majority's attempt to distinguish *Howsam*.

Here, I see no relevant distinction between Cox's attempt to avoid the arbitrability of his employment dispute based on whether or not he properly followed the procedures of the AAA and Dean Witter's challenge to arbitrability in *Howsam* based on the National Association of Securities Dealers (NASD) procedural rules. *See Howsam*, 537 U.S. at 81. In this case I would follow the reasoning of the Supreme Court in *Howsam* that "[b]ecause the parties would likely have committed interpretation of a [AAA] rule to a [AAA] arbitrator, that particular issue of procedure was left for the arbitrator to decide."[1] Opinion at 9074 (citing *Howsam*, 537 U.S. at 86).

---

[1]Such approach is correct notwithstanding the majority's citation to out of circuit cases considering waiver based on extensive participation in litigation. *See, e.g.*, *Khan v. Parsons Global Servs.*, 521 F.3d 421, 428 (D.C.

Here, neither party disputes the existence nor validity of the arbitration agreement. Therefore, I concur in the majority's decision to compel arbitration. However, I would remand all other issues to the arbitrator, including the issues of whether the arbitration provision was waived or breached, and therefore dissent to the extent the court holds otherwise.[2] *See How-sam*, 537 U.S. at 85.

## II

Let me add that I find the majority's treatment of *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005), to be problematic and I would not reach it. If I, rather than the arbitrator,

Cir. 2008) (holding that Parsons waived right to compel arbitration by "filing a motion for summary judgment based on matters outside of the pleadings"); *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 43, 46 (1st Cir. 2005) (considering question of waiver *after* the "AAA dismissed the Tyco demand for arbitration . . . for lack of written consent"); *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (holding that "a party waives its right to arbitration when it engages in *protracted litigation* that prejudices the opposing party (emphasis added)); *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997) ("Indeed, a party waives the right to compel arbitration *only* in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown." (emphasis added)).

[2]The majority opinion states that my approach leads to "a strange result: the arbitrator would get first crack at defenses to a motion to compel arbitration based on waiver or breach." Opinion at 9074-75 n.5. However, the majority opinion's approach is no less strange; it would require a court to answer the question of waiver before deciding whether the question of waiver is one for the arbitrator to decide. *See* Opinion at 9073 n.4, 9074-75. Such an approach leads to a waste of judicial resources should the court find that the arbitration clause was not breached or waived and it does take into account the FAA's policy favoring enforcement of arbitration agreements. Although not directly on point, *Buckeye Check Cashing* instructs us that when faced such a "conundrum" we must "resolve[ ] it in favor of the separate enforceability of arbitration provisions." 546 U.S. at 448-49.

were to reach the question of whether or not arbitration was properly invoked, however, I would reluctantly conclude that *Brown* controls this case. In my view, there is simply no principled difference between the holding that Ms. Brown properly invoked arbitration in *Brown* and the district court's finding that Mr. Cox properly invoked arbitration here.